## LESTER *vs.* MAHAN.

1. Suspicion of fraud on the part of the defendant, coupled with gross inadequacy of price, and the pre ore of pecuniary embarrassment on the part of complainant, is sufficient to .ndrce a court of equity to rescind a contract of sale.

2. In this case the contract v,as rescinded, upon proof that the complainant, who was in embarrassed circumstances, (his property levied on, and about to be sold under execution,) sold his farm to defendant, received part of the price in cash, and for the residue accepted a deed from defendant to a tract of land lying in Georgia, which complainant had never seen, and which was not worth more than one half the amount at which it was estimated in the transaction.

APPEAL from the Chancery Court of Tallapoosa.
Heard before the Hon. JAMES B. CLARK.

BILL FOR THE RESCISSION OF A CONTRACT. The material facts of the case will be readily understood from the opinion of the court. The chancellor decreed the relief prayed, and his decree is now assigned for error.

J. T. LEFTWICH, for the appellant, contended that the whole of complainant's testimony consisted of loose, idle declarations, carelessly and lightly made, which were entitled to no weight against the positive denials of the answer; that the evidence, at most, could raise but a bare suspicion, which was not sufficient to induce the court to set aside the contract; that complainant himself sought the contract; that he placed no reliance on defendant's representations as to the value of the land, because the latter said he had never seen it; and that defendant had no connection with the complainant's pecuniary embarrassments.

L. GRESHAM, B. J. WHATLEY, and WHITE & PARSONS, *contra:*
The record shows, in the trade made between the parties, that Lester practiced a fraud on Mahan, and this appears, 1st, in false representations of Lester as to the value of the Georgia lands; 2d, inadequacy of price paid to Mahan for

his land in Alabama; 3d, the act of Lester in taking an undue advantage of the necessitous condition of Mahan. The false statement of a material fact, by words, acts, or artifices, is an actual fraud, and a court of equity will set aside a contract, (induced by such false statement,) and declare it a nullity (Boney v. Hollingsworth, 23 Ala. 660 ; Read v. Walker, 18 *ib.* 323 ; Munroe v. Pritchett, 16 *ib.* 785 ; Tucker v. Woods, 12 Johns. 190) ; and it is immaterial whether the party making the false statement knew it to be false or not, if the trade was induced by such false statement.—Read v. Walker, 18 Ala. 323, and authorities there cited ; Reese v. Wyman, 9 Geo. R. 430 ; 12 U. S. Digest, p. 225, § 83. Inadequacy of price *per se*, unless gross and unconscionable, as a general rule, will not set aside a sale, but when connected with other facts of a suspicious nature, the strongest presumption of fraud will be indulged.—Wormack v. Rogers, 9 Geo. R. 60. The answer of Lester being contradicted by the proof in a material point, as it is in reference to his having seen all his Georgia lands, it loses its force as evidence.

CHILTON, C. J.—The record presents the appellant as seeking to hold on to a tract of land, purchased at less than half its value, of a distressed neighbor, whose property was then shortly to be sold under execution, and to relieve which the sale was made. He was to pay enough to satisfy the execution in money, say $200, and for the remaining $500 gave a deed for certain parcels of land lying in the State of Georgia, estimated in the negotiation as worth that sum. These lands the appellee never saw, and knew nothing about them ; consequently the estimate was placed upon them by the representations of Lester. These representations do not consist of bold or direct assertions as to value, quality or quantity, but seem to be of an evasive, adroit character, and so guarded that, while they evidently served to create false impressions in the mind of Mahan as to the value of the land, yet the appellant should escape the charge of having stated what was positively untrue. He had seen only a portion of the land, but it by no means follows that he was not apprised of the value of the whole. Many persons deal in lands who have never seen them :—they buy and sell upon the representation

of agents, or persons on whose judgment they may safely rely, and who have examined them. Nor is it at all probable, that a man would own several parcels of land, for any considerable length of time, without knowing something about their value ; especially, if he had taken the trouble to examine in person one piece lying remote from his residence, might a reasonable inference be drawn that he had made inquiry, and obtained information, respecting the other tracts not supposed to lie-very remote from the one examined. Experience proves that ordinarily prudent men usually take this precaution.

But he refers to the character of the timber, which he says is marked on the plat and grant of one piece, and from that he supposes the soil is of good quality. This he had mortgaged for $200 or more, " and redeemed it *at the same* sooner than let it go ;" he did not believe it would command that sum at the time of the sale to Mahan however ; and thus, while he evidently desires to make the impression that it was worth more than $200 when he redeemed it, he would avoid the effect of the representation by the subsequent qualification. Again ; while he says he did not know its value, he protests that he would not thank a man to give him less than $500 for the lands offered in exchange ; and after this assertion, the appellee said, " It's a trade."

Now we entirely agree with the chancellor, that in view of all the circumstances of the case, as shown by the bill, answer, and proof, the appellant ought not to be allowed the benefit of this bargain. He knew he was dealing with a man under the pressure of embarrassment—one ignorant, save as he informed him, of the value, quality, and location of the lands proposed to be given in exchange for his farm ; and he seems to have measured his expressions with much adroitness, so as to inspire the appellee with confidence, and induce him to make the bargain under the belief that the Georgia land was well worth $500, and at the same time artfully to escape the responsibility of having directly mis-stated the facts. He evidently created the belief that it was worth $500 ; and had it been worth this sum, even then he would have obtained Mahan's land at a sacrifice. But it is not worth, according to the highest estimate, half that sum.

Conceding that the counsel for the appellants are right, in saying that the proof only raises a suspicion of fraud, this suspicion, coupled with the gross inadequacy of price, and the pressure of pecuniary embarrassment under which Mahan labored, is sufficient to induce a court of conscience to wrest from the appellant all gains from such a transaction.

Although inadequacy of price is not of itself, in general, sufficient to avoid a contract, yet it has been held, that when coupled with weakness of mind, from whatever cause produced, *or with pecuniary distress*, or circumstances of fraud, it affords a proper subject of relief in equity.—McCormick v. Malin, 5 Blackf. 509.

It is well settled, that in the exercise of its jurisdiction as regards fraud, the court of chancery is not confined to the rules and principles acted upon by the courts of law. It goes farther—nay, sometimes, even contrary to the rules which obtain in the common-law courts, in suppressing fraud. In Garth v. Cotton, 3 Atk. Rep. 755, Lord Hardwicke, in reply to the objection that the law gave no remedy, said, "But this case depends on principles of equity ; that is, the point of fraud and collusion, which establishes the authority of this court, often contrary to and beyond the rules of law." See to same point, 1 Spence's Eq. Jurisp. 625. According to the rules of law, fraud must either be proved, or be apparent from the intrinsic nature of the transaction ; but in chancery, it may be presumed, or rather inferred, from the surrounding circumstances (1 Spence 625) ; i. e. it may be established in equity by presumptive evidence, which would not be deemed sufficient at law.—1 Story's Eq. § 190 ; 2 Vesey 155 ; 18 *ib.* 483.

So in Trunchard v. Manley, 2 P. Wms. 167, it was held, "that might be a fraud in equity which was not at law."— S. P. Fallager v. Clark, 18 Ves. 483.

Judge Story says : "Where the party, intentionally, or by design, misrepresents a material fact, *or produces a false impression*, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case, there is a positive fraud in the truest sense of the term : there is an evil act with an evil intent ;" " and," he adds, " the misrepresentation may be as well by deeds, or acts, as

by words; *by artifices to mislead,* as well as by positive asser-tions."—1 Eq. Juris. § 192 ; Laidlaw v. Organ, 2 Wheat. 195.

The ground of defence set up by the appellant presents him in no favored light in a court of equity. It is, that both he and Mahan being ignorant of the value of the Georgia lands, and he believing they were worth $500, and obtaining an allowance of that sum for them, should be allowed to hold Mahan to the bargain, notwithstanding they were both en-tirely mistaken in the value. In other words, he seeks to shelter himself under the idea of an innocent mistake to hold Mahan to an unconscientious bargain. Having contributed to produce the mistake, by means savoring of artifice and de-ceit, good faith and honesty require that he should rectify it, and place his deluded vendee in *statu quo.* This the chan-cellor has done ; his decree must, therefore, be affirmed.