## M. KELLEY AND P. H. McHALE v. ELIZA CAPLICE.

UNCONSCIONABLE CONTRACT, *Not Enforced.* On June 11, 1875, C. was indebted to K. & M. in the sum of $600; at the time, C. had in his possession an endowment policy issued by an insurance company, insuring his life in favor of his wife. In consideration of the satisfaction of this indebtedness and $275, C. and his wife executed a written assignment of the policy to M., and delivered the policy and assignment to him, and thereby transferred all their right, title and interest in the policy. Afterward, M. paid to the company all subsequent premiums and premium notes. The policy matured May 12, 1878. The amount then due thereon was $1,477.73. K. & M. demanded this sum from the insurance company, but it refused to pay without Mrs. C.'s receipt on the back of the policy. Mrs. C. refused to sign her name, unless she was paid $477.73 when the policy was collected. In compliance with this extortionate demand, K. executed to Mrs. C. his written promise to pay her this sum on the payment of the policy, and M. guaranteed the payment of the money within ten days after the policy was paid. When the policy was paid, K. & M. refused to comply with their written promise. Mrs. C. brought her action thereon, and the court gave her judgment for the full amount, interest and costs. *Held,* That as Mrs. C. availed herself of the situation in which K. & M. were placed to exact an unreasonable sum and an unconscionable bargain, she cannot enforce their written promise, but may recover what is fairly due her for the inconvenience, or service in writing her signature.

*Error from Pottawatomie District Court.*

ELIZA CAPLICE brought her action in the district court of Pottawatomie county, against M. Kelley and P. H. McHale, on the following writing:

"SAINT MARY'S, May 9, 1878.

"For and in consideration that Mrs. Eliza Caplice signs and releases all her right, title and interest to and in policy No. 34,169 of Northwestern Mutual Life Insurance Company for $2,000 on the life of Michael Caplice, for the sole use and benefit of Eliza Caplice, his wife, I hereby agree and bind myself unto the said Eliza Caplice to pay unto her the sum of four hundred and seventy-seven and seventy-three one-hundredths dollars, on the payment of said policy unto P. H. McHale or order, for whom I have power of attorney.

"M. KELLEY.

"Signed in presence of J. W. Fitzgerald."

"MAY 29TH, 1878.—I, the undersigned, hereby guarantee the payment of the within amount, viz., $477.73, not later than ten days after the payment of the within-mentioned policy.          P. H. McHALE."

Defendants in their answer pleaded, among other matters, that the paper executed by them was obtained by fraud and extortion, and was without consideration. The trial was had before the court, a jury being waived. A general finding was rendered in favor of the plaintiff, and judgment entered accordingly, for the sum of $575 and costs. The defendants bring the case here.

*J. S. Merritt*, for plaintiffs in error.

*Thomas P. Fenlon*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: In substance, the case is this: On the 11th day of June, 1875, Michael Caplice, the husband of the defendant in error, was indebted to the plaintiffs in error in the sum of $600. At the time, Michael Caplice had in his possession a certain ten-year endowment policy, issued by the Northwestern Mutual Life Insurance Company, insuring his life for the benefit of his wife, Eliza Caplice, the defendant in error. To pay the indebtedness of $600, and for $275 in addition, Michael and Eliza Caplice executed and delivered to P. H. McHale, one of the plaintiffs in error, the following assignment, the same executed in duplicate, to wit:

"SAINT MARY'S, KAS., June 11, 1875.

"For a valuable consideration, the receipt whereof is hereby acknowledged, we by this instrument do assign and transfer to P. H. McHale, of Saint Mary's, Kansas, all our right, title and interest in and to policy No. 34,169, for his sole use and benefit. In case of the death of said assignee before the policy becomes due, then and in that case it shall be payable to the heirs or assigns of P. H. McHale.

"MICHAEL CAPLICE.          [Seal.]
"ELIZA CAPLICE.          [Seal.]"

When Michael Caplice took out the policy, he executed to the insurance company ten premium notes of $82.38 each, and agreed to pay quarterly premiums of $28.34 each.

McHale paid the quarterly premiums and premium notes maturing against the policy after the assignment and transfer. At the execution of the written assignments, the following blank receipt was on the back of the policy, viz.:

"Received ————— 18—, of the Northwestern Mutual Life Insurance Company, ————— dollars, in full of all claims on the within policy."

This receipt the Caplices did not then sign. The policy matured May 12, 1878. The amount due thereon was $1,477.73. The plaintiffs in error demanded this sum of the company, but it refused to pay without Mrs. Caplice's receipt. The latter refused to sign the receipt without the written agreement. The writing was executed, and Mrs. C. gave her signature to the receipt on the back of the policy.

On the part of the plaintiffs in error, it is claimed that Mrs. Caplice ought not to recover, because it is alleged that it was her moral and legal duty to execute the receipt. On the part of Mrs. C., it is contended that she was under no moral or legal obligation to give her signature; that her signature was purchased for the writing sued on, and that such agreement is valid and binding.

We do not agree with counsel for plaintiffs in error, that Mrs. C. was under a legal duty to sign the receipt. She had previously done all that the law required of her in the assignment and transfer of the policy; she had actually performed every act necessary to put plaintiffs in error in possession of the policy, and every benefit to be derived therefrom. The illustration of the release of a mortgage by the mortgagee is not applicable. By the statute, it is the legal duty of the mortgagee to enter satisfaction on demand of the mortgagor when the mortgage is paid. Independent of the statute, such duty existed, which could have been enforced in a court of chancery against the mortgagee, on his refusal to enter a release after payment. On the other hand, neither can we agree with counsel for defendant in error, that the written promise ought to be fully enforced. The agreement is an unreasonable and unconscionable one. Mrs. C. is only entitled to reasonable compensation for the inconvenience or service in making her

signature. She suffered no loss, injury or disadvantage, nor parted with anything of value in signing her name. The demand for the signature of Mrs. C. on the part of the insurance company before payment was arbitrary, and yet out of abundant caution in transacting its business, not very unreasonable. Frequently, insurance policies, especially endowment policies, are hypothecated for the repayment of money, and in such cases just such assignments are executed as appear in this case. On their face they are absolute, yet in fact the transfer is only for security. When the debt is paid, the beneficiary or owner of the policy is entitled to its return. Notwithstanding the execution of such an assignment in the latter instance, the company, after due notice, has no right to pay the pledgee. So, to save any question of this character arising, we suppose the insurance company was anxious to have the signature of Mrs. C. on the policy. Morally, Mrs. C. ought to have given it, without making the extortionate demand she did. Instead of acting justly, she attempted to take advantage, and an unfair one, of the plaintiffs in error, who had bought and paid for all her right and interest in the policy. She thought herself in a condition to exact an unconscionable bargain, and for service worth only a few cents she demanded and received a written promise for the payment of nearly five hundred dollars. The mind revolts at the enforcement of such a promise, and as the courts, as a rule, under such circumstances seize upon the slightest act of oppression or advantage to set at naught a promise thus obtained, we are of opinion that Mrs. C. is only entitled to what may be fairly due her for writing her signature, and that she cannot recover on the agreement. *Hough v. Hunt,* 2 Ohio, 495, and cases there cited. See also the following authorities: *Sasportas v. Jennings,* 1 Bay, 470; *Motz v. Mitchell,* (Pa. Sup. Ct.), Albany L. J., vol. 21, No. 12, p. 237; Chitty on Contracts, 625.

The judgment of the district court will therefore be reversed, and the case remanded for a new trial.

VALENTINE, J., concurring.

BREWER, J., taking no part in the decision.