GRENVILLE R. BROWN *vs.* WILLIAM H. HALL.

A., who was of improvident habits and unskilled in affairs, applied to B., a real estate and mortgage broker, to procure a loan, having previously had loans from him. B. prolonged the negotiations for a month, objecting to the security offered, which was an undivided interest worth some $10,000 in inherited realty, and finally loaned A. $2,000 instead of $1,000, the sum originally requested by A., taking from A. a note in the following terms secured by a mortgage on his undivided interest in the inherited lands.

Secured by Mortgage on Real Estate.

$2,000.                                          *November* 18, 1879.

Six months after date, for value received, I promise to pay William H. Hall, or order, Two Thousand Dollars with interest at the rate of five per cent. per month, payable monthly in advance till said principal sum is paid, whether at or after maturity, and all instalments of interest in arrear to carry interest at the same rate till paid.

The note was indorsed of its date, Received 1 month's interest to December 18, 1879, $100.00.

When this transaction took place a statute allowed parties to make their own agreements as to interest, and prescribed six per cent. in the absence of any agreement.

Subsequently A. filed a bill in equity against B. to redeem the mortgage and to reduce the rate of interest.

*Held,* that in the relation of the parties B. had taken an unconscionable advantage of A., and that A. was entitled to relief.

*Held,* further, that as the note was drawn by B. with careful provision for its running beyond maturity, as the mortgage did not state the interest of the note so that the rate of interest did not appear of record, and as B. never demanded payment, B. could not urge against A.'s prayer for relief that the amount due for interest was largely due to A.'s neglect in paying.

*Held,* further, that as A. admitted his intention to pay five per cent. per month for the first six months, B. should be allowed this interest for this time.

*Held,* further, that the case should be referred to a master to fix a reasonable rate of interest, not less than six per cent., on the note and unpaid instalments of interest, and to report the amount due.

*Held,* further, that as many facts bearing on the case were put in evidence without objection, although insufficiently charged in the bill, the complainant should be allowed to amend, if necessary, on proper terms.

BILL IN EQUITY to redeem a mortgage. The facts involved are stated in the opinion of the court.

*July* 19, 1883.   DURFEE, C. J.   This is a bill to redeem a

mortgage given by the complainant to the defendant to secure his note to the defendant for money lent. The following is a copy of the note:

*Secured by Mortgage on Real Estate.*

$2,000.                                    *November* 18, 1879.

Six months after date, for value received, I promise to pay William H. Hall, or order, Two Thousand Dollars with interest at the rate of five per cent. per month, payable monthly in advance till said principal sum is paid, whether at or after maturity, and all instalments of interest in arrear to carry interest at the same rate till paid.

(Signed)                    GRENVILLE R. BROWN.

Indorsement Nov. 18, 1879: Received 1 month's interest to December 18, 1879, $100.00.

The complainant asks the court, in allowing him to redeem, to reduce the rate of interest to the legal or a reasonable rate, on the ground that the stipulated rate is grossly exorbitant and unconscionable. He sets out in his bill, with a good deal of particularity, the circumstances under which the note and mortgage were originally given and subsequently retained, for the purpose of showing that he did not fully understand the terms of the note when he signed it, and that the defendant took advantage of his necessities and inexperience, and of his confidence in the defendant, to overreach and impose upon him.

Under our present statute, borrower and lender are allowed to make their own terms in regard to interest, and if the contract be fairly entered into, without fraud, actual or imputed, the court cannot revise it. It is sometimes said that a contract may be set aside in equity for gross inadequacy, but an examination of the cases shows that this has scarcely ever been done, the parties being competent, unless the inadequacy was coupled with circumstances of fraud or oppression, or of advantage taken of some relation of trust or dependence. Doubtless, however, the inadequacy may be so flagrant as of itself to afford a presumption of fraud, as, for instance, if the contract be, in the language of Lord Hardwicke, " such as no man in his senses, and not under delusion, would make on the one hand, and as no honest or fair man would accept on the other." *Earl of Chesterfield* v. *Janssen,* 2 Ves. 125 ;

1 White & Tud. Lead. Cas. 541 ; *Gwynne* v. *Heaton*, 1 Bro. C. C. 1, 8 ; *Osgood* v. *Franklin*, 2 Johns. Ch. 1. It is easy to imagine a rate of interest, reserved for money lent on good security, so excessive that any court would revolt from exacting it. In *Earl of Aylesford* v. *Morris*, L. R. 8 Ch. App. 484, the court disallowed interest at the rate of sixty per cent. It is true the loan there was to an expectant heir, but the loan was without security, and if sixty per cent. is fatally excessive before the heir inherits, and, therefore, while there is a real risk, it is difficult to see how it would be less so afterwards. Nevertheless, courts are without doubt exceedingly reluctant to infer fraud from mere inadequacy, for fear of impairing freedom of contract, and very few cases, if any, can be cited in which they have done it. We think, however, that this may unquestionably be said in regard to gross inadequacy of consideration, namely, that, whenever it exists, it suggests a strong probability of fraud, which the court will search as with a microscope to find, and it will be quick to seize upon the slightest circumstances of unfairness or oppression to grant relief. And we think it may further be said that negotiations for loans are watched by the courts with a special scrutiny, because the necessitous borrower is so often at the mercy of the extortionate and relentless lender. A few cases may be cited to illustrate this.

The case of *Sime* v. *Norris*, 8 Phila. 84, resembles the case at bar. There the defendant gave his note for $4,125, payable in thirty days, with interest monthly in advance until paid, at the rate of two and one half per cent. a month, the interest if not paid to become a part of the principal and be compounded. The note was given in California in 1864. In a suit upon it in the Supreme Court in Pennsylvania in 1871, when the note, with interest compounded according to its terms, amounted to $26,643.54, Judge Sharswood held that the stipulation for interest was unconscionable and deceptive, and allowed interest at ten per cent. only, the ordinary legal rate in California. In the case at bar the note, as we construe it, does not call for compound interest, but each monthly instalment carries simple interest, until paid, at the rate of five per cent. a month. It is not so deceptive as the California note, the interest not being compounded, but nevertheless it is

very deceptive; for no mind, unaccustomed to figures, would conceive without calculation the prodigious rapidity of its increase, if permitted to run. Such a note grows like a banyan tree, generating a new stem every month, until it becomes an interest bearing forest, incessantly multiplying and accumulating its increments. The note here increased in three years and six months, according to the complainant's computation, from $2,000 to $10,650. And the note here, if not so deceptive as the California note in its mode of increase, is vastly more unconscionable in its rate of interest.

In *Hough* v. *Hunt*, 2 Ohio, 495, Hough, being pressed for money, applied to Hunt for a loan of $2,600. Hunt agreed to lend Hough $10,000, on condition that Hough should buy of him 593 acres of land at $20 an acre, being more than double its value. He advanced the $2,600, and took from Hough three notes for $4,825 each, to cover the advance and the price of the land. He took a mortgage as security for the note first to become due, and to secure the other two retained the title to the land sold. The balance of the $10,000 beyond the $2,600 was never advanced, Hough being unable to give satisfactory security. In a suit for relief the court rescinded the contract for the land, being of the opinion that Hunt had taken an unfair advantage of Hough's necessities. "When a person is incumbered with debts," say the court, "and that fact is known to a person with whom he contracts, who avails himself of it to exact an unconscionable bargain, equity will relieve on account of the advantage and hardship. Where the inadequacy of the price is so great that the mind revolts at it, the court will lay hold on the slightest circumstances of oppression or advantage to rescind the contract."

In *Butler* v. *Duncan*, 47 Mich. 94, Duncan, a young man of dissolute and prodigal habits, in want of money, gave Butler a mortgage on all his real estate to secure his note for $5,000, with interest at ten per cent., payable semi annually. For this note he received $1,000 cash, a due bill for $47 held by Butler against him, a credit of $199 interest on a former mortgage, and a deed conveying to him 160 acres of land for $3,200, which were worth but little more than $1,000. Butler also procured insurance on Duncan's life, for which he paid $110.35 premium, and retained

$556.75 to pay premiums thereafter. On a bill to foreclose and a cross bill to redeem, the court allowed Duncan to redeem on payment of the money received or credited, and paid for premiums on the policy of life insurance, which Butler was required to reassign to him, and on reconveying the land purchased. " To state the transaction mildly," say the court, "it was taking advantage of Duncan's weakness and anxiety, and, under the guise of an apparently fair business transaction, exacting a usurious interest which a court of equity cannot sanction." See, also, *Howley* v. *Cook*, I. R. 8 Eq. 570, 589, 590 ; *Cockell* v. *Taylor*, 15 Beav. 103, 115, 116 ; *M'Cormick* v. *Malin*, 5 Blackf. 509 ; *Butler* v. *Haskell*, 4 Des. 651 ; *Lester* v. *Mahan*, 25 Ala. 445 ; *Dunn* v. *Chambers*, 4 Barb. S. C. 376 ; *Summers* v. *Griffiths*, 35 Beav. 27, 33 ; *Greer* v. *Tweed*, 13 Ab. Pr. N. S. 427 ; *Russell* v. *Roberts*, 3 E. D. Smith, 318 ; *Kelley* v. *Caplice*, 23 Kans. 474 ; *Gordon, Rankin & Co.* v. *Tweedy*, 71 Ala. 202.

The evidence in the case at bar shows that, some years before the transaction here in controversy, the defendant had made four loans on mortgages to the complainant, to wit, two in 1871, one of which was for $3,000 and the other for $1,200, and two in 1873, one of which was for $1,000 and the other for $10,000. The complainant had then just come of age. He was reckless and improvident, with slender capacity for business. The defendant in the course of these dealings acquired a knowledge of his character, and apparently profited by his knowledge ; for whereas in the first two loans he accommodated the complainant at the rate of seven or seven and a half per cent., in the last two he exacted twelve per cent. and a heavy *bonus* besides. The complainant testifies that when he applied for the loan in 1879 he had recently lost his mother and was suffering from mental anxieties, on account of a controversy over her will which unfitted him for business. We do not see that we can let this state of his mind influence our decision, for it does not appear that the defendant knew of it. The defendant probably supposed him to be equal to what he was in 1871 and 1873, and dealt with him on that footing. The complainant was distressed for money, being exceedingly anxious to pay a debt of $500 to a friend, and doubtless manifested his anxiety to the defendant. The security which he offered was a mortgage on an

undivided fifth of certain lands, which had been the dower estate of his mother, his interest in them being worth at least from $10,000 to $12,000. The defendant encouraged the application, but said he should have to charge a larger rate of interest because the estate was undivided, and the security therefore bad. He did not then say what interest he should charge. The complainant testifies that he asked originally for not over $1,000, but the defendant wanted him to take $2,000, saying that he could the more easily dispose of a mortgage for that amount. The defendant denies this, but we are inclined to believe the complainant. The defendant, after promising the loan, kept the complainant waiting, putting him off from time to time for three or four weeks. We cannot imagine what motive the defendant had for this delay, unless he hoped so to quicken the complainant's avidity and make him the readier to consent to the monstrous interest which he intended to charge. The complainant testifies that when the note was finally shown to him and he saw that the interest was to be five per cent. a month it startled him, and he remonstrated with the defendant; but that the defendant explained to him that, in this case, there was to be no *bonus* in addition to the interest, and so after some discussion he signed the note. He testifies that he did not read the note carefully through, but signed it under the impression that the five per cent. was only for the six months, and that after that interest would be payable according to law, and that the defendant told him he would not have to trouble himself about paying the instalments as they fell due. We think it scarcely credible that the complainant did not read the note, though it is quite possible that, in the distraction of the moment, he did not read it attentively enough fully to comprehend it, and that, having got his money, he gave it little thought afterwards.

We are not prepared to say that, even if this were the entire case for the complainant, it would not be a case for relief. The contract is so cruel in its terms that certainly we should recoil from enforcing it. But it is not the entire case. The defendant was not a mere money lender. He was a real estate broker, and as such made it a part of his business to negotiate loans on mortgages. In this character he invited custom and confidence. The complainant went to him as a broker; and therefore when he received his ap-

plication he assumed a protective relation towards him, and was bound, instead of overreaching, to look out for him. It was his duty to give him full and true information, and to be sure that he understood the contract. He cannot disavow the relation; for though he did not charge a commission, he omitted to charge it as a concession expressly accorded to the complainant on account of the high rate of interest, and it was he, not the complainant, who had the note and mortgage prepared, the complainant having no independent advice in the transaction. It would seem, therefore, under the familiar rule in regard to parties occupying a confidential or protective relation that the burden is on the defendant to show affirmatively the perfect fairness of his conduct; but even if we do not exact the rigor of the rule, we still think it is quite clear that the defendant came short of his duty. In the first place he ought not to have permitted the complainant to sign a note of such complication and peculiarity without fully acquainting him with the cogency of its terms. And, secondly, he led or designedly allowed the complainant to suppose that the stipulated interest was warranted by the nature of the security and by the fact that no *bonus* was taken. Thus, instead of protecting the complainant, he overreached him, taking advantage of his necessities.

The defendant insists that the interest was not unreasonable because the money lent was worth more to him in his business, and the mortgage, being on undivided property, could not be disposed of. We do not believe that a mortgage for $2,000 on an undivided interest worth five or six times as much, with interest at a fair figure, could not have been disposed of. Witnesses of experience tell us that though mortgages on undivided property are not so desirable as other mortgages, the difference of interest is ordinarily not more than from two to four per cent. Again, the defendant urges that the interest would not have been so grossly exorbitant if the note and interest had been paid, as the complainant agreed to pay them, when they fell due, and that the complainant ought to bear the consequences of his own neglect. We think there would be force in this argument in some circumstances; but here the note was evidently prepared by the defendant with complicated provisions for it to run on after maturity without payment. He knew the dilatory financial habits of his customer from previous experi-

ence, and, in our opinion, did not expect him, after getting the money, to trouble himself to repay it until pressed to do so. The mortgage was so drawn as not to put the terms of the note on record, where the complainant's friends might have become aware of them and come to his relief. The evidence shows that the defendant did not ask for repayment, but apparently was surprised, not to say disappointed, when he found the complainant taking the initiatory step towards repayment of his own accord. The evidence also indicates that the defendant not only abstained from asking for repayment, but that from time to time he had the interest computed for his own satisfaction, carefully watching its fatal progression. The claim of the defendant that the complainant was at one time informed of the amount of the indebtment is contradicted by the complainant, and is not in our opinion established. Under these circumstances, considering the way in which the note originated, we do not think the defence that the complainant might have paid the note and the instalments when they fell due, and so have stopped the interest, is valid. In *Sime* v. *Norris*, 8 Phila. 84, the defence, if good, would have been complete, but does not even appear to have been thought of.

Our conclusion is that the rate of interest ought to be reduced to a reasonable rate, except that the defendant may be allowed to have the five per cent. a month for the first six months, with reasonable interest on the unpaid instalments, inasmuch as the complainant admits that he intended to agree to the five per cent. for the first six months and does not object to pay it, and that the case should go to a master to fix a reasonable rate, not below six per cent., and, computing the interest accordingly, to report what is due on the mortgage. We hesitate at this decision only because the facts on which we rest it are very imperfectly alleged in the bill. The facts, however, were put in evidence without objection, and, this being a bill to redeem, we do not think we ought to oblige the complainant to submit to unjust terms of redemption by reason of any technical defect, but should rather permit him to amend, if amendment be necessary, on proper terms.

*Order accordingly.*

*Henry J. Spooner, Augustus S. Miller & Arthur L. Brown,* for complainant.

*Edward D. Bassett,* for respondent.