## George C. Hicks

*v.*

## William G. Stevens.

*Filed at Ottawa March 22, 1887.*

1. PAROL EVIDENCE—*as to representations leading to contract—to show fraud.* On bill to set aside a written agreement for the sale of an invention or patent right, on the ground it was procured by false and fraudulent representations of the vendor, the verbal statements of the vendor, made to the purchaser before the sale, as to the nature, character, capability and value of his invention, are admissible in evidence,—not for the purpose of varying the written contract, but to show fraud.

2. PLEADING—*in chancery—allegation of fraud.* A bill in equity seeking to set aside a contract as having been procured by fraud, should charge the fraud specifically, and not in general terms. The facts relied on as constituting fraud should be set out, so as to apprise the defendant what he must meet.

3. FRAUD—*ground of relief—false representations.* To entitle a party to relief, either legal or equitable, on the ground of a fraudulent representation, he must have relied upon the representation as true. While it is necessary that he should trust the representation, it is not essential that the false representation should have been the sole inducement to his entering into the contract.

4. SAME—*relying upon representations made—whether warranted or not.* A party entering into a contract upon a false representation, must, under the circumstances of the case, have been justified in relying upon it, in order to obtain relief. When the representations relate to substantial matters of fact, and not mere opinion, and especially when they are concerning matters which, from their nature or situation, may be assumed to be

within the knowledge or under the power of the party making them, the party to whom they are made has a right to rely upon them, and in the absence of any knowledge of his own, or of any fact to arouse suspicion, it will not lie in the mouth of the other party to object that he was taken at his word.

5. If false representations are made as to matters of fact, and the means of knowledge are at hand, and equally accessible to both parties, and the purchaser, instead of resorting to them, trusts the vendor, the law, as a general rule, will not relieve him from his own want of ordinary care.

6. A different rule obtains where the property is at a remote distance, or where the property right is intangible, and the falsity of the representation can not be detected by inspection. In such case the purchaser may rely on the vendor's representations as to any material fact, and even as to the value and capabilities of the subject of the sale.

7. SAME—*presumption whether false representations are relied on.* Where a party, ignorant of the real facts, and having no ready means of information, makes a purchase or enters into a transaction, as to the subject matter of which representations have been made which are material, the law will presume that, as a matter of fact, he relied on them.

8. SAME—*cautionary advice by one making fraudulent representations.* Although a party follows his misrepresentations by words of general caution, or by advice to the other that he consult his friends, or examine for himself before concluding the agreement, he does not thereby counteract any effect upon the transaction which his untrue statement would otherwise produce.

9. SAME—*evidence—printed circular representing qualities of thing sold.* On bill to set aside a contract for the sale of a patent right for a certain State, on the ground of fraudulent misrepresentations of the vendor as to the value, capability and usefulness of the thing patented, circulars of the vendor issued by him and shown to the purchaser, will be admissible in evidence, as showing the representations made by him to the purchaser.

10. RESCISSION OF CONTRACT—*decree as to repayment of option.* A sold B, for $500, an option giving him the right to purchase of A a patent right for the State of New York, at the sum of $20,000. C paid B one-half of the $500, and the two then bought the right for the State of New York, the $500 paid by B being taken out of the price of the State right: *Held,* on bill by C to set aside the sale of the State right, on the ground of fraud, it was error to require A to pay to C the $250 he had paid to B, the sale of the option not being affected by the fraud in the subsequent contract.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

This was a suit in chancery brought by Stevens, for the rescission of a contract of purchase of a certain patent right, on the ground of false and fraudulent representations in respect thereto, made by Hicks, the vendor.   In the trial court a decree was entered according to the prayer of the bill. That decree having been affirmed in the Appellate Court, Hicks sued out this writ of error.

Mr. H. W. WOLSELEY, for the plaintiff in error: ·

The court erred in admitting in evidence the verbal statements made by Hicks in relation to the tube-closer, prior to the execution of the written agreement.   *Turner* v. *Navigation Co.* 2 Dev. 239; *Beebe* v. *Swartout*, 3 Gilm. 184; *Witherspoon* v. *Carmichael*, 6 Ired. Eq. 150; *Miller* v. *Cother*, 5 Ga. 346; *James* v. *McKernon*, 6 Johns. 543; *Gouveneur* v. *Elmandorff*, 5 Johns. Ch. 79; Sugden on Vendors, 244.

The court erred in admitting evidence tending to show that the tube-closer would not accomplish more than, or as much as, good dampers and tight doors.   *James* v. *McKernon*, 6 Johns. 563.

The findings of the court are not supported by the evidence. Is the Hicks tube-closer worthless?   *Sherman* v. *Transportation Co.* 31 Vt. 176; *Gatling* v. *Newell*, 9 Ind. 582; *Seymour* v. *Osborn*, 11 Wall. 516; *Alder* v. *Dewey*, 1 Story, 336; Curtis on Patents, sec. 9; *Tilghman* v. *Proctor*, 102 U. S. 707.

Did Hicks make any materially false representations? *Walker* v. *Hough.* 59 Ill. 378.

Did Stevens rely on any representations made by Hicks? 2 Pomeroy's Eq. Jur. secs. 892, 893; Sugden on Vendors, 244; *Halls* v. *Thompson*, 1 S. & M. 481; *Tindall* v. *Harkinson*, 19 Ga. 448; *Marshall* v. *Peck*, 1 Dana, 612; *Yates* v. *Price*, 11 Ark. 66; *Mooney* v. *Miller*, 102 Mass. 220; *Tuck* v. *Downing*, 76 Ill. 98; *Douglas* v. *Littler*, 58 id. 351; *Glasscock* v. *Minor*, 11 Miss. 657; *Smith* v. *Richards*, 13 Pet. 37; *Fauntleroy* v. *Wilcox*, 80 Ill. 477.

The question of fact not being clearly proved as alleged in the bill, the court below erred in granting any relief thereon. *Graham* v. *Pancoast*, 30 Pa. St. 97·; *Walker* v. *Hough*, 59 Ill. 380; *Small* v. *Atwood*, 6 C. & F. 479; *Halls* v. *Thompson*, 1 S. & M. 490; *Ayres* v. *Mitchell*, 3 id. 694; *Tuck* v. *Downing*, 76 Ill. 98.

There being no allegation in the bill, of fraud, mistake or undue influence, and no evidence thereof, the court below erred in decreeing a rescission of the contract. *Sims* v. *Klein*, Breese, 302; *Mey* v. *Gulliman*, 105 Ill. 285; *Fauntleroy* v. *Wilcox*, 80 id. 481; *McArtee* v. *Engart*, 13 id. 248; *Beebe* v. *Swartout*, 3 Gilm. 184; Sugden on Vendors, 244; *Rockafellow* v. *Baker*, 41 Pa. St. 321; *Nace* v. *Boyer*, 30 id. 110; *Marshall* v. *Dana*, 1 Dana, 612; *Walker* v. *Hough*, 59 Ill. 378.

The representations which Stevens attempted to prove were untrue, and do not warrant the granting of any relief.    As to the merits and capabilities of inventions, see *Tuck* v. *Downing*, 76 Ill. 97; 1 Story's Eq. Jur. sec. 191; *Page* v. *Bent*, 2 Metc. 374; *Schramm* v. *O'Connor*, 98 Ill. 542; 2 Kent's Com. 485; *Gatling* v. *Newell*, 9 Ind. 576.

·    As to value, see Sugden on Vendors, 3; *Coil* v. *Female College*, 40 Pa. St. 445; *Graham* v. *Pancoast*, 30 id. 97; *Page* v. *Bent*, 2 Metc. 374; *Nœtling* v. *Wright*, 72 Ill. 390; *Plummer* v. *Rigdon*, 78 id. 228; *Spieglemeyer* v. *Crawford*, 6 Paige, 256.

The representations were not such as Stevens had any right to rely upon.    *Plummer* v. *Rigdon*, 78 Ill. 228; *Gatling* v. *Newell*, 9 Ind. 576; *Coil* v. *Female College*, 40 Pa. St. 445; *Graham* v. *Pancoast*, 30 id. 97; *Rockafellow* v. *Baker*, 41 id. 321; 2 Pomeroy's Eq. Jur. sec. 879; *Dillman* v. *Nadlehoffer*, 19 Ill. 380.

Although Stevens may have made an improvident bargain, or paid an excessive consideration, in the absence of fraud he can have no relief.    *Osgood* v. *Franklin*, 2 Johns. Ch. 23; 2 Kent's Com. 487; *Van Horn* v. *Keenan*, 28 Ill. 448; *Nœtling*

v. *Wright,* 72 id. 391; *Tuck* v. *Downing,* 76 id. 101; *Bedell* v. *Loomis,* 11 N. H. 19; *Coles* v. *Trecothick,* 9 Ves. 246; *Juzan* v. *Toulmin,* 9 Ala. 686; *Green* v. *Thompson,* 2 Ired. Ch. 365; *Nace* v. *Boyer,* 30 Pa. St. 110; *McArfee* v. *Engart,* 13 Ill. 248; *Douglas* v. *Littler,* 58 id. 351.

The court below does not find, nor does the evidence show, that Hicks knew that Stevens confided or trusted in any representations made by him. 1 Story's Eq. Jur. sec. 197; *Tuck* v. *Downing,* 76 Ill. 97; *Smith* v. *Richards,* 13 Pet. 39.

Mr. Ullman Strong, and Mr. Edward A. Dicker, for the defendant in error:

In equity, misrepresentations of material facts by a vendor, whether he knew they were false or not, will entitle the vendee relying on the same, to rescind. It is not material whether the vendor knew the representations were false or not. 2 Pomeroy's Eq. Jur. secs. 885, 887, and note 4; Benjamin on Sales, (4th Am. ed.) sec. 421, 454; *Allen* v. *Hart,* 72 Ill. 104; *Ruff* v. *Jarrett,* 94 id. 479; *Brown* v. *Tuttle,* 66 Barb. 169; *Lester* v. *Palmer,* 86 Mass. 145; *Sledge* v. *Scott,* 56 Ala. 202; *Parmalee* v. *Adolph,* 28 Ohio, 21; *Frenzel* v. *Miller,* 57 Ind. 1; *Gatling* v. *Newell,* 9 id. 576; *Elder* v. *Allison,* 45 Ga. 13.

The circular is evidence of the representations. 2 Pomeroy's Eq. Jur. sec. 881, p. 364; *Wilcox* v. *Henderson,* 64 Ala. 540; *Morgan* v. *Skiddy,* 62 N. Y. 329; *Bradbury* v. *Barden,* 35 Conn. 582; *Fenn* v. *Curtis,* 23 Hun, 388.

To entitle complainant to recover, it is not necessary that he should have relied solely on the false representations. If he was influenced thereby, though he relied, in part, on other information, he can recover. *Redgrave* v. *Hurd,* 20 L. R. (Ch. D.) 1; Benjamin on Sales, (4th Am. ed.) secs. 429, 453; 2 Pomeroy's Eq. Jur. sec. 890, p. 375; *Thorne* v. *Prentiss,* 83 Ill. 99; *Ruff* v. *Jarrett,* 94 id. 479; *Morgan* v. *Skiddy,* 62 N. Y. 329; *Shaw* v. *Stine,* 8 Bosw. 157; *Reynal* v. *Sprye,* 1 DeG.,

M. & G. 719; *Nichol's case,* 3 DeG. & J. 387; *Smith* v. *Richards,* 13 Pet. 26; *Daniel* v. *Mitchell,* 1 Story, 172; *Doggett* v. *Emerson,* 3 id. 700; *Hough* v. *Richardson,* id. 690.

The presumption is that the representations were relied on. *Redgrave* v. *Hurd,* 20 L. R. (Ch. D.) 1; *Nichol's case,* 3 DeG. & J. 387; *Fishback* v. *Miller,* 15 Nev. 428; Benjamin on Sales, (4th Am. ed.) sec. 429, and note b, and sec. 453.

Where false representations are accompanied or followed by words of general caution, the effect of the misrepresentations is not thereby counteracted. *Reynal* v. *Sprye,* 1 DeG., M. & G. 709; *Smith* v. *Richards,* 13 Pet. 26; Pomeroy's Eq. Jur. sec. 896.

Credulity of a vendee can not be set up by the vendor to avoid a rescission. *Kendal* v. *Wilson,* 41 Vt. 567; *Allen* v. *Hart,* 72 Ill. 104; *Pierce* v. *Wilson,* 34 Ala. 603.

If confidential relations exist, then misrepresentations of matters of opinion can be relied on. Story's Eq. Jur. secs. 197, 198, 212 a; *White* v. *Southerland,* 64 Ill. 183; *Tuck* v. *Downing,* 76 id. 71; 2 Pomeroy's Eq. Jur. sec. 956, and notes, p. 478; *McCormick* v. *Miller,* 102 Ill. 208; *Sieveking* v. *Litzler,* 31 Ind. 17.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

There is no dispute as to the making of the contract of sale in this case, or as to its terms, the principal controversy being whether Hicks, before the sale, made material representations as to the utility and value of the invention sold, which were relied on by Stevens, and which were false. The evidence satisfies us that prior to the consummation of the sale the parties had frequent interviews, in which Hicks represented to Stevens and Jones, that the "Hicks Tube-closer" was a new and valuable invention, and would save both steam and fuel; that it was a good and profitable thing to sell, and would bring great profits. Hicks also gave Stevens a printed circular, set-

ting forth therein its capabilities and merits, which, among other things, stated that the use of the "tube-closer demonstrates, to a positive certainty, its ability to show, by the steam guage, in the morning, before firing up, the same steam pressure that is felt at night after the day's work. It will even hold steam in the boiler from Saturday night until Monday morning. It is guaranteed to save fully fifteen per cent of fuel, or whatever fuel is usually required to raise steam in the morning. The Hicks tube-closer will do it. It will save its cost every month." Hicks also assured Stevens in some of the interviews, that the right to make and sell the tube-closer in either of the States of Ohio and Pennsylvania was worth $50,000; that the right to the State of New York was worth the same sum, and that the appliances could be manufactured for five dollars apiece, and would sell for $30 each, and that there were not less than two thousand boilers in each of the States named. Most of these representations, especially those in the circular, are not denied. Hicks, by his answer and testimony, claims that all the representations he in fact made were true, but whether true or false, they were not relied on by Stevens in making the purchase.

It is claimed there was an error in admitting in evidence the verbal statements made by Hicks in regard to the tube-closer, prior to the written agreement for its sale. Such statements were not admitted for the purpose of changing the terms of the written contract, but to show that its execution was procured through fraudulent misrepresentations on the part of the vendor, and for that purpose it was certainly proper to admit them.

But it is said there is no charge of fraud in the bill, and hence there was no foundation in the pleadings to justify the admission of the evidence. This is a misapprehension. Good pleading requires fraud to be charged specifically, and not in general terms. The facts relied on as constituting fraud should be set forth, so as to apprise the opposite party what

he is called on to meet. (*Elston* v. *Blanchard*, 2 Scam. 420; *Davis* v. *Pickett*, 72 Ill. 483.) The bill sets forth the specific representations made by Hicks which induced the complainant to make the purchase, and then charges "that the representations in the circular given by Hicks to the complainant and Jones, and the representation that by Hicks' experience by the use of said invention great saving of steam and fuel could be made, and other representations of like effect, whereby complainant and Jones were induced to purchase said rights, are and were utterly false, and said invention is worthless, and by its use no saving of any practical value can be made," and were known by Hicks to be worthless and of no value. The facts alleged in the bill, if true, constitute a fraud. If it were otherwise, Hicks should have interposed a demurrer, or motion to dismiss for want of equity.

It is urged that Stevens did not rely on any of the representations made by Hicks, but acted upon his own judgment, and that if he did rely upon them, he was guilty of such negligence, in failing to properly investigate, as to deprive him of any equitable relief. To entitle a party to relief, either legal or equitable, on the ground of a fraudulent misrepresentation, he must have relied upon the representation as true, for unless the representations are believed to be true, and acted upon, it can cause no legal injury. It is necessary that he should trust the representation, but it is not essential that the false representation should be the sole inducement to his entering into the contract. (2 Pomeroy's Eq. Jur. sec. 890; 2 Parsons on Contracts, 5th ed. 773.) The party acting upon a representation must, under the circumstances of the case, have been justified in relying upon it, in order to entitle him to relief. As stated in Pomeroy's Equity Jurisprudence, (sec. 891:) "It may be laid down as a general proposition, that where the statements are of the first kind, (relating to substantial matters of fact, and not mere opinion,) and especially when they are concerning matters which, from their

13—121 ILL.

nature or situation, may be assumed to be within the knowledge or under the power of the party making the representation, the party to whom it is made has a right to rely on it; * * * and in the absence of any knowledge of his own, or of any facts which should arouse suspicion and cast doubt upon the truth of the statements, he is not bound to make inquiries and examination for himself. It does not, under such circumstances, lie in the mouth of the person asserting the fact, to object or complain because the other took him at his word. If he claims that the other party was not misled, he is bound to show clearly that such party did know the real facts. The burden is on him of removing the presumption that such party relied and acted upon his statements." And in section 895 the same author says: "When a representation is made of facts which are or may be assumed to be within the knowledge of the party making it, the knowledge of the receiving party, concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence."

When a party ignorant of the real facts, and having no ready means of information, makes a purchase or enters into a transaction, as to the subject matter of which representations have been made which are material, the law will presume, as a matter of fact, that he relied on them. *Redgrave* v. *Hurd*, 20 L. R. (Ch. D.) 1; *Nichols' case*, 3 DeG. & J. 387; *Fishback* v. *Miller*, 15 Nev. 428; Benjamin on Sales, (4th Am. ed.) 465, note b.

If false representations are made as to matters of fact, and the means of knowledge are at hand, and equally available to both parties, and the purchaser, instead of resorting to them, trusts the vendor, the law, as a general rule, will not relieve him from his own want of ordinary prudence. (Cooley on Torts, 487.) This is the case where the property is tangible and is at hand, and subject to inspection. But a different rule obtains when the property is at a remote distance, or

where the property right is intangible, and the falsity of the representations can not be detected by inspection. In *Smith* v. *Richard*, 13 Pet. 26, it is held, that when a sale is made of property, but at a remote distance, which the purchaser knows that the seller has never seen, but which he buys upon the representation of the seller, relying on its truth, such representation, in effect, must be deemed to amount to a warranty, or at least that the seller is bound to make it good. Cooley on Torts, 488; *Maggart* v. *Freeman*, 27 Ind. 531; *Lester* v. *Mahan*, 25 Ala. 445.

In the case at bar, the purchaser was wholly unacquainted with the use, operation and management of steam boilers, and of the utility and value of the invention, and it is doubtful whether its capabilities, usefulness and practical value could then have been determined, even by experts, without very considerable use and long experiment. At the date of this contract, the patent, though allowed, had not been issued, and but few of the tube-closers had been used or tested by others than the inventor. Stevens testifies that he had not seen the tube-closer in use or operation before he signed the contract; that he inquired of several to whom he was referred by Hicks, but could learn nothing as to its merits, except from one party, who said he had tried it, but had thrown it away. When Hicks was informed of this, he said he had met a similar case, and had fixed it up so that it worked all right, and that he would do the same with this one. Hicks was the inventor, and claimed to have made thorough tests of his invention, and, presumably, had a greater knowledge of its use, capabilities, utility and value than any other person. From these facts, and his profession of friendship to Jones, and of his desire to put him into a good paying business, we think Stevens and Jones not only relied upon the representations, but had a right to rely on them, in making their purchase. (*Allin* v. *Millison*, 72 Ill. 201.) It is true that Hicks told Stevens and Jones not to take his word, but to satisfy themselves as

to the merit of his invention before buying; but this can not relieve him from liability for his misrepresentations made for the purpose of inducing the purchase. He must have known that but little, if any, information could be obtained, by inquiry, from the fact the tube-closer had not been brought into general use. The inquires made proved fruitless; as he must have known they would.

In 2 Pomeroy's Equity Jurisprudence, (sec. 896,) it is said: "If, therefore, the party accompanies or follows his misrepresentations by words of general caution, or by advice to the other that he consult his friends or professional advisers before concluding the agreement, he does not thereby counteract any effect upon the transaction which his untrue statement would otherwise produce,"—citing *Raynal* v. *Sprye*, 1 DeG., M. & G. 709; *Smith* v. *Richard*, 13 Pet. 26.

In *Eaton* v. *Winnie*, 20 Mich. 126, the court say: "When one assumes to have knowledge upon a subject of which another may well be ignorant, and knowingly makes false statements regarding it, upon which the other relies, to his injury, we do not think it lies with him to say that the party who took his word and relied upon it, was guilty of negligence in so doing, so as to be precluded from recovering compensation for the injury which was inflicted upon him under cover of the falsehood,"—citing *Pennsylvania Railroad Co.* v. *Oglen*, 35 Pa. St. 72; *Gordon* v. *Grand Street Railroad Co.* 40 Barb. 550; *Evart* v. *Hudson River Railroad Co.* 35 N. Y. 28. See, also, *Wabash* v. *Hall*, 66 N. C. 233; *Oswald* v. *McGehee*, 28 Miss. 340; *McClellan* v. *Scott*, 21 Wis. 81; *Starkweather* v. *Benjamin*, 32 Mich. 305; *Kendall* v. *Wilson*, 41 Vt. 567; *Pierce* v. *Wilson*, 34 Ala. 603.

To maintain an action at law for fraud and deceit, arising from false representation of a material matter connected with a transaction, it is necessary to show that the party making it knew it to be false, or occupied such a position as that the law would impute to him a knowledge of the fact.

A person can not, it is believed, be free from fraud, in a court of equity, when he makes a positive representation of a material fact which he does not know to be true or has good reasons to believe is true, and which, in point of fact, is false. In *Allen* v. *Hart*, 72 Ill. 104, it is held that it is not indispensable to a right to rescind a contract, that the party making the representation knew it to be false, provided it is material and the other party had a right to rely upon it, and did so, and was deceived,—and this is believed to be sustained by the weight of authority. In this case, Hicks' facilities were superior to those of any one else, for knowing whether the representations made by him were true. If he did not, in fact, know them to be true, he should not have so asserted to Stevens, whom he knew had no means at hand by which to detect their falsity.

There was no error in admitting in evidence the printed circular of Hicks, showing the valuable qualities of his invention. The proof shows that he gave Stevens one of them during their negotiations, containing material and important representations of what his invention would accomplish as a means of saving steam and fuel,—that it would save its cost in a month,—while the proof showed that, practically, it was of no value in the respect mentioned in the circular. These circulars were printed and distributed for the purpose of inducing others to purchase rights of him, and the statements therein may be regarded as of a more deliberate character than if made in a conversation. They were properly admitted. See 2 Pomeroy's Eq. Jur. sec. 881, and also Cooley on Torts, 477.

As a general rule, representations as to the value of property sold, though exaggerated, do not constitute fraud ; but it has some exceptions. As said in Cooley on Torts, page 484 : "There are some cases, however, in which even a false assertion of an opinion will amount to a fraud, the reason being, that, under the circumstances, the other party has a right to

rely upon it without bringing his own judgment to bear. Such is the case when one is purchasing goods the value of which can only be known to experts, and is relying upon the vendor, who is a dealer in such goods, to give him accurate information concerning them. The same rule has been applied when a dealer in patent rights sold certain territory to one who was ignorant of its value, representing it to be very valuable, when he knew it was not." (See *Allen* v. *Hart*, 72 Ill. 104.) The value of a patent right, for the purpose of sales, depends largely upon the usefulness of the invention, and the demand for the article patented.

Objection is made to the admissibility of some other evidence. In chancery it will be presumed that the court considered and acted only upon such as may be proper. As the other evidence in the case is sufficient to sustain the decree of the Superior Court, it will not be necessary to consider the objection.

It is also claimed that the Appellate Court erred in directing that the $250 paid by Stevens be added to the money decree. Before Stevens was introduced to Hicks, the latter made sale to Jones of an option to purchase the right to the State of New York, at $20,000, and Jones had paid him $500 therefor. Jones was not bound to take the right for the State of New York, but if he did not, he could not recover back the money he had paid for the option. Stevens bought of Jones a half interest in the option, for which he paid Jones $250. To this transaction Hicks was not a party. If Jones and Stevens together failed to purchase the State right, Stevens could not have called on Hicks to refund to him the money he had paid to Jones; and when the contract for the purchase of the right for the State of New York was rescinded, it was the same, in substance, as if it had never been made. Hicks was again placed where he was before his sale, and Jones and Stevens having failed to exercise their option, could not compel Hicks to return the price paid for it. The bill did

not seek to set aside and rescind Jones' contract for the purchase of the option. Nor did Hicks refuse to let either Jones, or Jones and Stevens, purchase the right for the State of New York, but, on the contrary, was anxious to have them take it. This ruling of the Appellate Court is, we think, clearly erroneous.

The judgment of the Appellate Court will be reversed as to so much of its judgment as adds to the decree the said sum of $250, and the decree of the Superior Court is affirmed.

*Judgment reversed in part and in part affirmed.*