## ELKINS, Administratrix, vs. KENYON and others.

CONTRACTS, RESCISSION OF: WARRANTY. (1) *What representations amount to warranty.* (2) *Contract rescinded for fraudulent representations — Patented article.* (3) *Rule as to positive and negative testimony not applicable.* (4) *Judgment affirmed on findings of court on conflicting evidence.*

1. In an action to *rescind a contract* and cancel promissory notes given for the right to use and sell a " patent screw-fork for elevating hay, grain, straw, etc.," *representations made by the vendor* " that the fork was in all respects a good one; that it would do good work, and would work in all kinds of hay, grain, straw, and other grass, and was in all respects fit for the use intended,"— *held,* to amount to a *warranty.*

2. If the instrument was one of no practical utility for the use intended, the plaintiff was entitled to a *rescission of the contract* on the ground of false and fraudulent representations.

3. In the case of such an instrument, simple in its character and whose value depends upon the ability of *farmers generally* to use it successfully, if numerous witnesses of that class testify that they have given it a full, fair and exhaustive trial, and were unable to make it work, and others testify that they have tried it and it worked successfully, the rule generally applicable in weighing *positive* against *negative testimony* does not apply.

4. The circuit court found, upon conflicting evidence, that the patented improvement here in question was of no value, that the fork would not do good work as represented, and that plaintiff's notes were obtained upon false and fraudulent representations; and it rendered judgment canceling them. This court agrees with such finding, and affirms the judgment.

APPEAL from the Circuit Court for *Rock* County.

Elkins, Adm'x, vs. Kenyon and others.

The action was originally brought by *William F. Elkins*, to enjoin the negotiation of certain promissory notes given to the defendant *Kenyon* as the purchase price for an interest in certain territory in a patented screw-fork for elevating hay, and to have the notes declared void and cancelled because of fraudulent representations as to the value of the fork and its capability to do the work intended. After the death of *Elkins*, his widow and administratrix, *Catherine Elkins*, was substituted as plaintiff in his stead. The evidence, which was exceedingly conflicting as to the utility and value of the fork, is sufficiently stated in the opinion. The case was tried by the court, which found for the plaintiff, and gave judgment as demanded by him. From this judgment defendants appealed.

*Cassoday & Merrill*, for appellants, argued, among other things, that a little positive testimony should outweigh much negative testimony as to the value of the fork and its fitness for the work intended. If ten credible witnesses swear that they have given the fork a fair and exhaustive trial and were unable to work it successfully, and one man equally credible swears that he has worked it successfully, and that it was valuable and adapted to the uses intended, the testimony of the one outweighs that of the ten, and the court must decide in favor of the usefulness and value of the fork.

*S. J. Todd*, for respondent,* argued that the remedy for a fraudulent sale, such as the one in question, was to put the parties *in statu quo*. Equity looks to the rescinding of the entire transaction, and the court will remit both parties to their original positions. Even if the agent, Guile, made false representations innocently, and without any fraudulent motives, by which *Elkins* was misled, equity would grant relief. *Buxton v. Lister*, 3 Atk., 383; *McFerson v. Taylor*, 3 Cranch, 270;

---

* It appears from the printed briefs on file that the late *J. C. Converse, Esq.*, who was counsel for plaintiff in the court below, prepared this brief prior to his death in July, 1870. — Rep.

*Smith v. Richards*, 13 Pet., 26: *Taylor v. Fleet*, 1 Barb., 473; Adams' Equity, p. 176. In this case the language of Judge STORY is applicable, that " when the party intentionally, or by design, misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage over him, in every such case there is a positive fraud in the truest sense of the term, there is an evil act with an evil intent." 1 Story's Eq., 192. To the same effect are the cases of *Pasley v. Freeman*, 3 Term, 23; *Taylor v. Ashton*, 11 M. & W., 400.

COLE, J. This action is brought for the rescission of a contract and for the cancellation of promissory notes. The notes were given by the plaintiff's intestate to the defendant *Kenyon*, to pay for a patent screw-fork for elevating hay, grain, straw, etc., and for the right to sell the same in certain towns in Rock county. The suit was commenced in the life-time of William T. Elkins, the maker of the notes, who verified the complaint. And he states and alleges that in June, 1867, the defendant *Kenyon*, by his agent, one Guile, represented that he had this patent fork for sale, and desired to dispose of the same with territory therefor, and then did falsely and fraudulently represent and warrant that the fork was in all respects a good one, that the same would do good work and would work in all kinds of grain, hay, straw, and other grass, and that it was patented, and was in all respects fit for the use intended; and that relying upon these representations and this warranty, he made the purchase and gave the notes. It is further alleged that the fork was in fact worthless and valueless, and was not fit for the use or the purpose intended, and that the representations and warranty upon which the notes were given were false.

In the answers of the several defendants it is admitted that these representations in regard to the value and utility of the fork, and its capacity to do good work in all kinds of hay, grain, etc., were made; and it is averred that such statements

and representations were in all respects true.   Upon the trial, some ten witnesses were sworn on the part of the plaintiff, who testified to having used the fork, or aided in using it, in pitching and elevating hay; and they all agree in saying that the fork was really of no practical utility, and was worthless; that it could not be made to work, and was not fit for the purpose intended.

On the other hand, about an equal number of witnesses testify on the part of the defendants, who say that they have used the fork, or seen others use it; that it worked well; and that it was a valuable improvement, and adapted to the uses intended.

This is substantially the state of proof upon the issue, as it appears in the bill of exceptions.

The circuit court found as a matter of fact, upon this branch of the case, that the improvement patented was of no value whatever, and that the fork would not do good work as represented, and that the promissory notes were obtained by means of false and fraudulent representations and pretenses; and it ordered them to be delivered up and cancelled.

It is now claimed that this conclusion of the circuit court is against the decided weight of testimony, when the number and character of the witnesses, and the nature of the proof introduced on the part of the defendants, are considered.   We have been unable, however, after a careful examination of the testimony, to adopt this view of the case, but agree with the court below in its finding as to the facts established by the evidence.

It would subserve no useful purpose to refer to and abstract all the testimony in the record bearing upon the question whether the fork did in fact, or could be made to, work according to the representations admitted to have been made when the contract was entered into by the parties.   If it was a valuable and useful implement of husbandry— if it would do good work in all kinds of hay, grain and grasses—it is certainly strange that practical farmers like Rubles, Gates, Henderson,

Bishop, Bostwick, Shumaker, Ellingwood and Childs, could do nothing with it, and pronounced it of no practical utility. These are all disinterested witnesses, except Childs, who, it seems, had purchased the right to use and sell the fork in two towns in Rock county, and had been sued upon the notes which he gave for this right; and we see no reason for discrediting their testimony. It is true, of the witnesses on the other side who do not appear to be in any way interested in the result of the suit, nor in any manner connected with the patent, or notes given for rights, Plato, Page, Towsley, Aldrick, Palmer and Johnson say they are practical farmers, and have used this fork and worked it successfully. Picket says that he once unloaded two or three loads of hay with it, but "did not use the fork enough to know whether it was a valuable one or not." Gunn, Hayner and Wilcox never saw the fork used until the day they testified, when it was tried in Hayner's barn. It is suggested that in weighing this evidence the rule applicable to positive and negative testimony applies; and that if two credible witnesses swear that they have given the fork a full, fair and exhaustive trial, and were unable to work it successfully, and one man equally credible swears that he has tried it and worked it successfully, the testimony of the one outweighs that of the two; and that in this state of the proof, the court must decide in favor of the usefulness of the implement. We do not think this is a correct application of the rule alluded to. The fact to be established here was, whether the fork would do good work in all kinds of hay, grain and grass, and whether it was of any practical utility for the use intended; in other words, whether upon trial by farmers, by whom it was intended to be used, it answered the representations made by the agent as to its capacity and usefulness. The value of the fork really was measured by the demand for it by agriculturists. If they could not use it or make it work, they surely would not buy it. The fork did not accord with the representations, if only one in ten of those by whom it was

designed to be used could work it successfully. This was a very simple instrument; as the defendant *Wiggins* says, " the fork shows for itself how it should be used; no particular skill is necessary in using it;" and a majority of the farmers who testified on the trial, who had used the fork, say it was worthless and had no practical utility. The representations made in respect to the fork amounted to a warranty. They were proven to be untrue by the best evidence that the nature of the case reasonably admits of — by a majority of the farmers who had actually tried to use the fork, and found it of no practical value. We do not know what different evidence, either as respects kind or quality, could be given to establish the falsity of the representations made, and to show that there was no consideration for the notes executed by the plaintiff's intestate. We therefore think the judgment of the circuit is correct, and must be affirmed.

*By the Court.* — Judgment affirmed.