# THOMAS H. ALLEN *et al.*

*v.*

# JAMES HART.

1. FALSE REPRESENTATIONS—*when cause for rescinding contract.* Any wilful misrepresentation of a material fact made with a design to deceive another, and to induce him to enter into a negotiation he would not otherwise do, will enable the party who has been overreached to annul the contract.

2. But it is not indispensable to the right to rescind that the party making the misrepresentation knows it is false, or whether he is ignorant of the fact stated, provided it is material, and the other party has a right to rely upon it, and does so and is deceived.

3. The vendor of a patent match box, and of territory covered by the patent, represented to the vendee, who had himself no knowledge on the subject, and no means of obtaining it, that the territory proposed to be sold was very valuable; that other parties had made purchases, and all had done well and realized large profits: *Held,* that the vendee had the right to rely on these statements, and having done so, and the statements having proved to be false, he had a right of action to recover back the money paid for such patent right.

4. EXPRESSION OF OPINION—*as to merits of article sold does not vitiate the sale.* A party may express his opinions freely as to the merits of any article he may have to sell, and can not be held responsible in an action for the truth or falsity of such expressions. A simple recommendation of goods, however unwarranted, is not, of itself, sufficient to vitiate a sale.

APPEAL from the Circuit Court of DeWitt county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Mr. S. G. MALONE, for the appellants.

Messrs. WELDON & BENJAMIN, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was to recover back the consideration paid by Hart to Allen & Pasten for an interest in a patent right known as "Hathaway's Magic Match Safe and Self-lighter,"

with the exclusive right to certain territory in the State of Indiana.

Hart claims he was overreached in the transaction, and that he was induced to make the purchase by the false and fraudulent representations of the vendors. Before bringing suit he tendered back a deed for the territory, which had been deeded to him, and the only question presented is, whether Allen & Pasten had been guilty of such fraud in procuring the making of the contract as would authorize Hart to rescind it and recover back the consideration. This is much more a question of fact than of law.

The general proposition is not denied, that any wilful misrepresentation of a material fact, made with a design to deceive the other, and to induce him to enter into a negotiation he would not otherwise do, will enable the party that has been overreached to annul the contract. But it is not indispensable to the right to rescind, the party guilty of making the misrepresentation knew it was false, or whether he was ignorant of the fact stated, provided it was material, and the other party had a right to rely upon it, did so and was deceived. Many instances are given in the books where a party purchasing an article may be as effectually injured by a representation which the vendor did not know to be untrue, as by one known at the time to be false. The effect upon the vendee may be the same in either case.

Mr. Kent, in his Commentaries, says : "The common law affords to every one reasonable protection against fraud in dealings, but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." 2 Kent Com. 484*.

The defense to this cause seems to have been rested on the principle stated in the text, viz. : the consequences resulting to Hart from the purchase were to be attributed to his own folly; that the parties dealt at "arm's length" with each other, the subject of the contract being before them for inspection, and

whatever representations were made by the vendors were mere expressions of opinion as to the merits of the invention.

A party, no doubt, may express his opinion freely as to the merits of any article he may have to sell, and can not be held responsible in an action for the truth or falsity of such expressions. *Simplex commendatio,* however unwarranted, has never, of itself, been regarded as sufficient to vitiate a sale. It will be treated as an invitation to purchase, since every vendor is permitted to allege the good qualities of such wares or articles as he may have for sale. The exception to this general rule is where it appears from the evidence, or words used, it was the clear intention the recommendation should be a warranty.

But we do not think the evidence in this case will bear out this theory of the defense. The vendors did vastly more than express an opinion as to the merits of the invention they were endeavoring to sell. Had they done nothing more we would agree with counsel, no cause of action had been proven. It must be remembered, the parties were not contracting, alone, about the little machine that contained the matches. That was exhibited to the vendee, and he could determine for himself whether it was a useful and valuable invention. But the principal thing about which the parties were bargaining was the value of the territory covered by the patent to be included in the purchase. On this subject the vendee had no knowledge whatever, and no means of obtaining it. The vendors professed to have accurate information as to its value. The representation was, it was very valuable; that other parties had made purchases, and all had done well, realizing large profits. The vendee had a right to rely on these statements. They were not mere expressions of opinion as to the value of the invention, but allegations of facts, about which the vendors claimed to know of their own knowledge, and about which they could not but know the purchaser was wholly uninformed.

The vendee was induced to believe the territory was of great value in the market; that large fortunes had been and could be realized from its sale. It is inconceivable any one, on seeing the invention, from the description given of it, and the uses to which it could be applied, could be induced to believe the thing itself was of any considerable value, or that it could ever come into general use. It seems hardly possible any sane person could be persuaded to part with the title to valuable property for an invention of such trifling importance, even if it be conceded it does well the work it is claimed to do. The explanation is to be found in the evidence. The vendee was impressed with the belief, from the assurances given by the vendors, that very profitable sales could be made of the territory covered by the patent deed. This is evident from the fact the purchasers did not go forth to sell the match safes themselves, but the territory. It was never contemplated any great profits could be realized from the sale of the invention, nor was the vendee assured of such a result. It was in the sale of the patent it was represented the other purchasers had realized considerable sums of money.

The fraud that vitiates this transaction consists in the untruthful representations as to the value of the territory. It is proven it was of scarcely any value as a thing of traffic in the market. This fact was known to the vendors at the time of the sale, and whether it was or not, it being in fact untrue, it was equally disastrous to the appellee.

The proof shows that by the most persistent efforts, the parties represented to have made such extravagant profits were wholly unable to effect sales to any considerable amount.

It will not do to say these were simply expressions of opinion as to the value of the territory to be embraced in the patent deed. They were intended to be, and were relied upon as assurances of its value as an article of trade, and being false, it would be a reproach to the law if it did not afford the injured party redress.

On some questions in the case there is very grave conflict in the evidence. No rule is better settled than is the doctrine, it is the province of the jury to harmonize the evidence as well as they can. This they have done. We are satisfied, from the direct testimony considered, in connection with the circumstances proven, about which there can be no real controversy, the verdict is sufficiently sustained.

Complaint is made as to some of the instructions given at the trial. We are unable, however, to perceive any error that would warrant a reversal of the judgment. Upon the whole record, we are satisfied justice has been done, and the judgment must be affirmed.

*Judgment affirmed.*