# Tabor *v.* Peters.

*Action on Promissory Note, by Payee against Makers.*

1. *Parol evidence as to warranty or fraud.*—In actions *ex contractu*, brought for an alleged breach of contract of warranty, oral proof of a warranty is not admissible; but, where the action is *ex delicto*, based on the tort or deception practiced by the false warranty, the rule is otherwise, and parol evidence is admissible to show that the contract was induced by an oral warranty, which was known by the party making it to be false, and which was made for the purpose of deceiving the other party.

2. *When misrepresentations constitute fraud.*—A misrepresentation of a material fact by the vendor of a chattel, made at the time of the sale, or pending the negotiations, on which the purchaser has the right to rely, and on which he does in fact rely, is a fraud, and furnishes a cause of action to the purchaser, or a ground of defense to an action for the purchase-money.

3. *Warranty of chattel.*—No particular words are essential to constitute a warranty. As a general rule, there must be the affirmation of some fact, as distinguished from the mere expression of an opinion. Words of praise or commendation, such as are ordinarily used by the vendor of wares or chattels, however extravagant, impose no liability, either in the nature of a contract, or as a fraud; but a false statement, deliberately made, though in the form of an opinion, as to the quality, quantity, or condition of the thing sold, may amount to a warranty, if so intended and understood by the parties; and what would be mere matter of opinion, when spoken by a non-specialist, may be matter of fact when spoken by a specialist.

4. *Same.*—A warranty, express or implied, does not cover defects which are external and visible, plain and obvious to inspection by the eye; but, even as to such defects, "the vendor would be guilty of a fraud, if he says or does any thing whatever with an intention to divert the eye, or to obscure the observation of the buyer."

5. *Same; what are patent defects.*—On the sale of a patent right to an improved churn, which the vendor himself was manufacturing, and a specimen of which he exhibited to the purchaser, stating that it was made of juniper-wood (whereas it was made of white pine), and that the dasher was nickel-plated, and would not discolor the milk or butter (whereas it was in fact made of polished iron, which would discolor the milk and butter); the court can not say that the difference in the appearance of these substances is so plain and obvious as to bring the case within the principle applicable to patent defects.

6. *Implied warranty as to suitableness of chattel manufactured by vendor.*—The vendor of the patent right being himself the manufacturer of the patented churn, and contracting to furnish to the purchaser a sufficient number of the churns, he must be held to have stipulated that they were useful and reasonably suitable for the intended purpose; and if

[Tabor v. Peters.]

they proved to be worthless in fact, this would be a failure of considera-
tion, resulting from the breach of the implied warranty, and available as
a defense against the note given for the purchase-money.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. LEROY F. BOX.

This action was brought by Thomas H. Tabor, against Wil-
liam M. Peters and James M. Peters; was commenced on the
14th April, 1883, and was founded on the defendants' two
promissory notes, for $75 and $50 respectively, each dated June
2d, 1882, and payable on the 1st October next after date, to the
plaintiff or bearer. The defendants pleaded, "in short by con-
sent, 1st, *non assumpsit;* 2d, want of consideration; 3d, fail-
ure of consideration; 4th, that the consideration of said notes
was the sale of a patent right which is worthless and not such
as represented by plaintiff, and said plaintiff practiced a fraud
on the defendants, and the said notes are without consideration;
5th, breach of warranty of the article sold." Issue was joined
on all these pleas. On the trial, as the bill of exceptions shows,
the plaintiff read in evidence the two notes sued on, neither of
which expressed the consideration on which it was founded;
and he also read in evidence the letters patent issued by the
United States to Abijah Johnson for "an improved churn," an
assignment of said letters patent by said Johnson to plaintiff,
and a written contract dated June 2d, 1882, by which plaintiff
transferred to said defendants, "in consideration of the sum of
$125 in hand paid," the said patent right and all interest under
it in and for the county of St. Clair, Alabama. One of the de-
fendants was then introduced as a witness for them, and "was
asked to state whether said Tabor made any representations to
him, in regard to the quality and value of the churn, before he
purchased the right to sell said churns." Said witness stated,
in reply, that said Tabor represented and told him, that the
churn would churn in from three to five minutes; that it was
made of juniper-wood; that the plunger-rod was nickel-plated,
and would not corrode or color the milk or butter; that a child
five or six years old could churn on it with ease, and that it
would last twenty years. The witness said, that on these rep-
resentations he purchased the right to sell said churn in St.
Clair county, and executed the notes sued on in consideration
thereof; that he discovered, after he had purchased the churn,
that it was made of white pine, the top of poplar, and that the
rod was not nickel-plated; that after using it a day or two it
would corrode or color the milk and butter; that it was too
heavy to be operated by women or children; that it would warp,
when not in use, so that the top would not fit, and when in use
the top would swell, and become so tight it had to be prized off.

[Tabor v. Peters.]

The plaintiff objected to the above evidence of said Peters, on the ground that it was illegal, irrelevant, and incompetent;" and he also objected to the question on the same grounds, and duly excepted to the overruling of his objections.

"Said witness testified, also, that plaintiff informed him, at the time of said purchase, that the churns were made at his manufactory in Cincinnati, Ohio, and could only be procured from his factory, and could be laid down in Talladega at $2.50 per churn, and agreed to give him printed orders for said churns, and without which orders (he said) witness could not procure any churns. Witness was a farmer, and said Tabor was a manufacturer of churns, and was familiar with patent churns. The defendant's evidence further showed, that he procured some twenty churns from said Tabor, ordered in conformity to his directions from his factory in Cincinnati, at $2.50 each laid down in Talladega. Witness purchased the churns for juniper churns, and afterwards found them to be of ordinary white pine. The evidence further showed that said Tabor had all of his churns made of white pine, and never had manufactured any juniper churns, and had never seen a juniper churn; and that the churns purchased of said Tabor were not nickel-plated, but the plunger-rod was of polished iron. Said witness stated, on cross-examination, that when he called on said Tabor, at the hotel in Talladega, and proposed to purchase said county right, said Tabor had a sample churn with him, and showed him the churn and its mode of operation; that he inspected said churn, and found it to be painted outside, but not inside; that the rod was exposed, and he inspected it; that the churns which he purchased from plaintiff's factory were like the said churn so showed him. He stated, also, in rebuttal, that he told plaintiff's attorney in this case, before the suit was brought, that the churn was not as represented by plaintiff, and that he would not pay for it, and that he offered to rescind the contract." Another witness for the defendants, who was present at the time the contract between the parties was made, testified to the plaintiff's representations as above stated; and exception was duly reserved by the plaintiff to the admission of this evidence. Several witnesses for the defendants testified, in substance, that the churns were too heavy to be operated by women and children, and that the butter and milk was discolored. The plaintiff reserved exceptions to the admission of this evidence, and he introduced several witnesses who testified, in substance, that the worth and capacity of the churn were equal to the representations made respecting it.

The bill of exceptions purports to set out all the evidence introduced on the trial, the substance of which is above stated. On this evidence, the court refused the following charges,

[Tabor v. Peters.]

which were asked in writing by the plaintiff: 1. "If the defendant inspected the churn, and the one inspected is just like those used and sold, then the defendant can not set up fraudulent representations, to prevent paying the notes sued on." 2. "The defendant can not set up fraud as a defense to this action, if he inspected the churn before purchasing it." 3. "If the jury find, from the evidence, that said defendant had an opportunity to inspect the churn before he purchased it, and that plaintiff did not make any representations to prevent him from making an inspection, defendant can not set up fraud to prevent paying the notes sued on." The plaintiff excepted to the refusal of each of these charges, and also to each of the following charges, which the court gave at the request of the defendants:

"1. If plaintiff represented that the churn would not rust, corrode or discolor the milk or butter, and it is shown that such representations materially influenced Peters in making the purchase, and such representations are shown to be false; then such statements would be a fraud on Peters, and would authorize him to repudiate the contract.

"2. If Tabor, at the time of the sale, represented that Peters could procure the patent churn, made of juniper-wood, from the manufacturer in Cincinnati, Ohio, for $2.25; and that this statement was false, and the churn manufactured by said Tabor was made of soft-pine wood; and that juniper churns could not be procured for that price, in Cincinnati or elsewhere; and that such representations materially induced the purchase,—such statement would be a fraud on Peters, and would authorize him to repudiate the sale and refuse payment.

"3. A manufacturer of articles for a special purpose, when that article is sold for such purpose, is held to have stipulated that it is useful and adapted to that purpose; and if the article so manufactured and sold is worthless, or is not useful for the purpose for which it was manufactured, then the vendor manufacturer has broken his contract, and the purchaser may renounce the contract, and refuse to receive the article; or, if he has received it, and afterwards learned its worthlessness, he may refuse to pay for it.

"4. In determining whether or not any fraud was accomplished, or whether the parties to the contract dealt on equal terms, the jury may look, in connection with the other evidence, to the opportunities of the parties for knowing the character and material composing the churn; and if the evidence shows that plaintiff was engaged in manufacturing the churns sold, and was intimately acquainted with the material out of which the churn was made; and that Peters was a farmer, and not

[Tabor v. Peters.]

acquainted with the material out of which the churn was made; then Peters might rely upon the truth of Tabor's statement as to the materials of which the churn was made; and if such representations are shown to have been willfully false, they would be a fraud on the purchaser, and would authorize him to repudiate the contract.

"5. If plaintiff stated to Peters that the churn could only be procured from one manufacturer in Cincinnati, and that juniper churns could be procured from said house at $2.25; and that this statement is shown to have been false, and juniper churns could not be had for that price, and the statement marially induced the purchase; then it would be a fraud on Peters, and would authorize him to refuse to pay for the patent right purchased.

"6. If Tabor made misrepresentations as to the qualities and merits of the churn sold, and these representations materially induced the purchase, then it is not necessary to show that the patent is absolutely worthless, but it is sufficient to show that the representations were false, and the purchaser was thereby deceived; and if the churn was not such as represented, and the purchaser was deceived by the false representation of the vendor, the purchaser would be authorized to repudiate the contract, and to refuse payment."

The rulings of the court on the evidence, the charges given, and the refusal of the charges asked, are now assigned as error.

D. T. CASTLEBERRY, for appellant.—(1.) The objections to evidence were well taken.—*Davis, Moody & Co. v. Betz & Cullman*, 66 Ala. 206; *Townsend & Milliken v. Cowles*, 31 Ala. 428; s. c., 37 Ala. 77; *Green v. Casey*, 70 Ala. 417; *Cargile v. Ragan*, 65 Ala. 281; 3 Wait's Actions & Defenses, 556. (2.) The charges refused should have been given.—*Barnett v. Stanton*, 2 Ala. 181, 195.

BOWDON & KNOX, *contra*. (No brief on file.)

SOMERVILLE, J.—The suit is on certain promissory notes, given by defendants to plaintiff for an interest in a patent right to what was alleged to be an improved churn, the territory included in the purchase being confined to the county of St. Clair, in this State. The defense set up is based on certain statements made by the plaintiff, as inducements to the purchase, relating to the qualities and capacities of the patented article, which are alleged to have been false, and fraudulently made; and want of consideration and failure of consideration are also pleaded.

It is shown that the plaintiff, Tabor, was himself engaged in

[Tabor v. Peters.]

the manufacture of these churns, and at the time of the nego-
tiation he made this fact known to the defendants, and exhib-
ited to them a sample or specimen of his patented invention.
The representations alleged to have been made by him at the
time are, that the churn would produce butter in from three to
five minutes; that it was made of juniper-wood; that the
plunger-rod was nickel-plated, and would not corrode or discolor
the milk and butter; and that a child, five or six years old,
could operate it with ease. The evidence tended to show that
these statements were untrue—that it would not produce butter
in less than ten minutes; that the body of the churn was made
of white-pine, and the top of poplar-wood; that it was too
heavy for use by women or children, requiring the strength of
a man to operate it; and that the rod was not nickel-plated,
but was made of polished iron, and would corrode or discolor
the milk and butter, to such extent as to render the invention
entirely worthless. The sample churn exhibited by plaintiff
was painted on the outside, and was inspected by one of the
defendants.

It was objected in the court below, that the evidence offered
by the defendants as to the foregoing statements was inad-
missible, because the contract of sale was in writing; and that
its tendency was to vary the terms of the writing, by super-
adding a verbal warranty of the article sold, when none was
contained in the contract itself. In all cases where the action
is *ex contractu*, brought for an alleged breach of a contract of
warranty, this is undoubtedly the rule. Oral proof of a war-
ranty is inadmissible in this class of cases, because its effect is
clearly to vary the terms of the written instrument, by super-
adding another term or condition not expressed by the parties.
1 Parsons Contr. *589–590. But the rule is otherwise where
the action is *ex delicto*, based on the *tort* or deception practiced
by the false warranty. Parol evidence is always admissible, to
show that a contract was induced by "an oral warranty made
by one of two contracting parties, which was false to the
knowledge of the party making it, and was made for the pur-
pose of throwing the other contracting party off his guard, and
fraudulently obtaining his consent to the bargain."—1 Addison
Contr. § 629. Such false representations are entirely collateral
to the contract; and when made as an inducement to procuring
its execution, they constitute a fraud, which vitiates its legal
validity, so far, at least, as to render it voidable at the option
of the party defrauded, seasonably expressed upon the dis-
covery of the fraud.—*Nelson v. Wood*, 62 Ala. 175; *Black-
man v. Johnson*, 35 Ala. 252; 1 Greenl. Ev. § 284.

The settled rule as to the nature of the representations which
will avoid a contract of sale is well stated in the case of *Sledge*

*v. Scott*, 56 Ala. 202. The rule, as there announced, is, that " a misrepresentation by a vendor of chattels, of a material fact, made at the time of, or pending the negotiation for the sale, on which the purchaser has the right to rely, and in fact relies, is *a fraud,* furnishing a cause of action to the purchaser, or a ground of defense to an action for the purchase-money." Benj. on Sales (3d Ed.), § 454; Story on Sales, § 165.

No particular words are essential to constitute a warranty. As a general rule, there must be the affirmation of some *fact,* as distinguished from the mere expression of an *opinion.* Words of praise or commendation by a vendor, such as are ordinarily used by honest tradesmen, as arts of persuasion to induce purchase, are deemed insufficient. They fall within the maxim, *Simplex commendatio non obligat,* and however extravagant, they do not in law impose a liability, either in the nature of contract or of tort.—*Farrow v. Andrews & Co.,* 69 Ala. 96; 1 Parsons' Contr. *579–581; 2 Brick. Dig. p. 408, §§ 75–78. A false statement, however, when deliberately made, although in the shape of an opinion, as to the quality, quantity or condition of the article sold, may often be construed to be a warranty, if it be so intended and understood by the parties.—1 Whart. Contr. § 259; *Barnett v. Stanton,* 2 Ala. 181. In *Wilcox v. Henderson,* 64 Ala. 535, it was said that "to constitute expressed *opinion* a ground, or instrument of fraud, it must be knowingly false, made with intent to deceive, and must be accepted and relied on as true." In determining the question of intention, which is generally one for the jury, at least in cases of doubt, a decisive test is, as suggested by Mr. Benjamin, "whether the vendor assumes to assert a *fact* of which the buyer is ignorant, or merely states an *opinion* or judgment, upon a matter *of which the vendor has no special knowledge* and on which the buyer may be expected also to have an opinion, and to exercise a judgment. In the former case there is a warranty, in the latter not." Benjamin on Sales (3d Ed.), § 613; *Kenner v. Harding* (85 Ill. 264), 28 Amer. Rep. 615. And " what would be matter of opinion," says Mr. Wharton, " when spoken by a non-specialist, may be a matter of fact when spoken by a specialist."—1 Whart. Contr. §§ 259–260.

There are many adjudged cases illustrating these principles in their application to the sale of patented rights and inventions. It has been said generally, that statements made by vendors, as to the utility of such patents, are considered matters of opinion, while those having reference to their practical capacity and characteristics are deemed matters of fact (1 Whart. Contr. § 259); a proposition which can not be taken to be universally accurate, many cases being dependent upon their

[Tabor v. Peters.]

own peculiar surroundings.    It has been held in an English case, that a statement to a farmer by a vendor, who was the patentee's agent for the sale of an agricultural machine, known as "Wood's Patent Reaper," that it would "cut wheat, barley, &c., *efficiently*," was not a warranty, but a recommendation. *Chalmers v. Harding*, 17 L. T. N. S. 571.    In *Elkins v. Kenyon*, 34 Wis. 93, the assertion by the vendor of a patented machine for elevating hay, that it would work "in all kinds of hay, grain, straw and other grass," and was "in all respects *fit for the use intended*," was decided to be a warranty.    In *Nelson v. Wood*, 62 Ala. 175, where the subject of sale was the right to use a patented process for tanning leather, representations made by the vendor as to the *time* it would take, and the *quality* of the leather produced, were held sufficient to vitiate the contract of sale, on proof being made that they were false, and that the process was of no value.

The case of *Bigler v. Thickinger*, 55 Penn. St. 279, was strikingly similar to the one in hand, being a suit on a note given for a patent right for a churn.    The representation made was, that it would make butter in from seven to ten minutes. One of the defenses set up being misrepresentation and fraud, the court said : "The representation of what the churn would do proved utterly false ; and although this was not a warranty in itself, yet it was for the jury to say, under all the circumstances, whether it was not a false representation, knowingly and fraudulently made.    The *parties were not in a position of perfect equality* to judge of the article, and hence the representation of the seller, if falsely made, would avoid the contract.    The jury found the falsity of the representations, and the worthlessness of the article, and this established a good defense."

In *Rose v. Harley*, 39 Ind. 77, a false assertion made by the vendor of a patent, as to what improvements were covered by it, was held to vitiate the sale of an interest in the patent right. So, in *Allen v. Hart*, 72 Ill. 104, false assertions as to the value of the territory covered by the patent, to be included in the purchase, based upon the statement of matters of fact, within the knowledge of the vendor and not of the purchaser, were decided to be a good ground of action to recover back the consideration paid for an interest in the patent right.

The charges given by the court below, in reference to the representations made by the plaintiff, Tabor, were correct, being in full accord with the principles above stated.

It is further contended, however, that the defendant can not set up fraud as a defense to this action, based on the falsity of these representations, because he inspected the specimen or sample churn exhibited to him by plaintiff, and it corresponded

7

with those manufactured by the vendor, and subsequently ordered by the defendant for sale in his purchased territory.

The rule is generally stated to be, that neither a general nor an implied warranty will cover defects which, being external and visible, are "*plain* and obvious to the purchaser" upon mere inspection with the eye.—*Livingston v. Arrington*, 28 Ala. 424; Benj. on Sales (3d Ed.), § 617; 1 Whart. Contr. § 225. It is said by Mr. Parsons, that "if there be an express warranty, an examination of samples is no waiver of the warranty; nor is any inquiry or examination into the character or quality of the things sold; for a man has a right to protect himself by such inquiry, and also by a warranty."—1 Parsons Contr. (6th Ed.), *586. Mr. Wharton observes, that warranties may be found to extend to patent defects, unless the statement made is "glaringly inconsistent" with the visible condition of things.—1 Whart. Contr. § 245. A warranty that a horse has both eyes, when he is manifestly blind, would not, it is apprehended, impose any liability.—1 Add. Contr. § 628. And, as held in an old case, "if one sells *purple* to another, and saith to him 'This is *scarlet*,' the warranty is to no purpose." It was said, that to "warrant a thing that may be perceived at sight is not good."—*Baily v. Merrell*, 3 Bulstr. 95; Benj. on Sales (3d Ed.), § 617. But, as observed by Chancellor KENT, "if the vendor says or does any thing whatever, with an intention to divert the eye, or obscure the observation of the buyer, even in relation to open defects, he would be guilty of an act of fraud."—2 Kent Com. *484–85.

It does. not appear that the defects in the patented churn, shown to the defendant by plaintiff at the time of their negotiation, were of this obvious character. The churn was painted on the outside, thus concealing the nature of the material of which it was constructed; and we can not say, without proof, that the appearance of white pine and juniper-wood is so different as to be glaringly obvious to the eye, when inspected under such circumstances. The same is true as to the handle or rod, and the representations which were made touching it.

The parties to the sale, moreover, were not in a condition of relative equality touching their knowledge, or ability to judge accurately of the thing sold. The plaintiff was a specialist, or expert, being a manufacturer of such articles; and was therefore possessed of a knowledge of facts in reference to their nature, capacity and structure, of which the defendant was both actually and professedly ignorant. In such cases, the misrepresentations of the seller will the more readily avoid the contract, and many statements when made by him will be deemed affirmations in the nature of fact, although they might be construed conjectural, or matters of opinion, had they emanated

[Wolffe v. Eberlein.]

from one not enjoying such opportunities of information. Such is the rule, at least, when such assertions are shown to have been falsely made, and were material inducements to the contract.—*Bigler v. Flickinger*, 55 Penn. St. 279-283; 1 Par. Contr. *580; 1 Whart. Contr. §§ 259-60.

The evidence is clear, that a part of the inducement to the purchase by defendants of the patent right in question was the ability and readiness of the plaintiff to furnish the defendants with a supply of the patented articles. The purchase was entirely useless without it. The plaintiff being himself the manufacturer; and having contracted to supply the articles manufactured by him for a special purpose, he must be held, by implication, to have stipulated that they were useful, and reasonably suitable for the purpose for which they were furnished. If they proved to be worthless, this would be considered a failure of consideration in the contract, resulting from a breach of the implied warranty. The purchaser, in such cases, has a right to rely upon the judgment and skill of the manufacturer.—*Pacific Guano Co. v. Mullen*, 66 Ala. 5ზ2; Benj. on Sales (3d ed. Bennett), §§ 657, 661; *Snow v. The Schomacker Manufg. Co.*, 69 Ala. 111; *Hight v. Bacon* (126 Mass. 10), 30 Am. Rep. 639.

The rulings of the court are in strict conformity to the foregoing principles, and its judgment is affirmed.