# WILLIAM R. BORDERS
## v.
## H. A. KATTLEMAN.

*Fraud—Evidence.*

In the case at bar it is held that the fraudulent representations charged in the bill were established by the evidence, and justified setting aside the transaction in question.

[Opinion filed February 25, 1890.]

Appeal from the Circuit Court of Randolph County; the Hon. George W. Wall, Judge, presiding.

Appellee alleges in his bill that he deposited with Borders & Boyle, bankers, $2,000, July 1, 1884, and received their certificate of deposit therefor; that upon a dissolution of said partnership the management of the partnership affairs went into the hands of Borders, Boyle being then, and still remaining insolvent, outside of his interest in the bank assets. That since the dissolution Borders and his son, William R., for a valuable consideration, agreed with Boyle to hold him harmless on account of all debts and liabilities growing out of said partnership. That about February 3, 1885, complainant applied for his money, and William R., who had then become a partner with his father in the banking business, represented to complainant, that he, William R., owned land in Randolph county, Illinois, worth $2,800, and had just sold the land to one Crozier for that sum, about $700 in cash, and the balance of the purchase money, $2,142, was secured by a mortgage on the land, and the mortgage was well worth its face, and was gilt-edged security; that William R. further represented to him the firm of Borders & Boyle were embarrassed; that he did not want complainant to lose anything, and advised him to take said Crozier mortgage in payment for the amount due him on said certificate, and if he thought best, to go and see said Crozier before he made the trade; that complainant did go to see Crozier, who lived near the land, and was told by him that he had bought the land of William R., at the price and on the terms as stated to complainant by William R.; had given note and mortgage on the land for the unpaid purchase money, and the same were good, and the note would be paid when due. That complainant was a miller by trade and knew little or nothing of the value of land, and having no reason to suspect Borders or Crozier of unfair dealings, did not go to see the lands, but concluded to accept said proposition of Borders, and surrendered to him said certificate, receiving in

return the Crozier note and mortgage, indorsed by said Borders without recourse.

The bill charges conspiracy between Crozier and Borders to misrepresent the facts concerning the value of the land, and to swindle complainant out of his money; and to carry out the conspiracy, a deed from Borders to Crozier for the land was executed on January 20, 1885; and on the same day a mortgage from Crozier and wife to Borders was executed, for the purpose of making an apparent sale of said land, with a mortgage back to secure purchase money; that even the consideration in the deed was falsely and fraudulently inserted to deceive complainant, and no consideration was ever paid by Crozier or intended by the parties; that Crozier was and is insolvent, and never intended to pay said note, and said note has long since been protested for non-payment; that the actual value of said land did not exceed $500, and is now worth no more; that Crozier and William R. Borders, at the time of said transactions, well knew its actual value did not exceed that sum, and falsely and fraudulently concocted said deed and mortgage, and falsely represented to complainant they were made in good faith, and represented actual values for the very purpose of taking advantage of complainant and swindling him out of the greater portion of his money; alleges he did not begin to suspect he was swindled until January, 1887, nor until a later date discover the character and magnitude of the fraud that had been perpetrated upon him, and not until the spring of 1888 was its true character revealed to him, and he informed William R. Borders he would make trouble unless the matter was settled up at once; alleges he yet has said note and mortgage and a guarantee of title, signed by said Borders, and had done nothing to lessen the value of them in any respect, and they are in full force and effect.

William R., James J. Borders, John C. Boyle, Samuel T. Crozier and wife, are made defendants.

The note, mortgage and guarantee of title are offered to be surrendered.

Complainant prays for an account of the amount due him on certificate, and for taxes paid, amounting to $100; that said

agreement between complainant and William R. Borders be set aside as having been obtained by fraud, and for a personal decree against the two Borders for the amount found due complainant, and for general relief. All the defendants answer, a replication to the answer was filed, and the cause was heard upon the issue so made, and evidence, in open court. By its decree the court finds the allegations in bill to be true, and that the equity of the cause is with complainant; that complainant on July 2, 1884, deposited with Borders & Boyle $2,000, and took therefor a certificate of deposit due in six months, with four per cent interest from maturity. That in February, 1885, after its maturity, William R. Borders represented to complainant that he was the owner in his own right of the land described in bill, and further represented he had sold it to defendant Crozier, for $2,800, and had taken back a mortgage for $2,142, balance due of purchase money, and further represented to complainant that Borders & Boyle were embarrassed, and he, William R., did not like to see complainant lose anything, and would sell him said mortgage for the certificate aforesaid, and referred complainant to said Crozier for information on the matter.

That complainant went to said Crozier, who made the same representations, and represented that the note was good and would be paid; that said land was inaccessible on account of ice and the condition of the river, and in consequence complainant did not see said land. That said Borders and Crozier represented to complainant there were forty acres of cleared land on said premises which Crozier was renting out. That the deed and mortgage bear date January 20, 1885. That by the means aforesaid and the said representations to complainant he was induced to transfer said certificate to Borders, and receive in return therefor said Crozier note and mortgage. That the bank of Borders & Boyle was superseded by the banking firm of Borders & Son, composed of James J. and William R. Borders, and the last named was a member of said firm at the date of his contract with complainant, *and took credit for said certificate, as cash, in the firm of Borders & Son, February 7, 1885.* The court further finds the representations of and the transfer between defendants

William R. Borders and Samuel T. Crozier were false and fraudulent, and made for the purpose of swindling complainant out of his said certificate of deposit, and said Borders and Crozier conspired together to defraud complainant. That at date of deed and mortgage the land did not exceed $600 in value, and not exceeding nine acres was cleared, and the rest was unfit for cultivation, and for a long time prior to that date and ever since, said land has been of no greater value, and for years prior to and at the date of said deed and mortgage and ever since, said Crozier was and is totally insolvent. That Borders conveyed said land to Crozier without other consideration than said note and mortgage, and said transaction was wholly colorable and intended to deceive the complainant. That James J. Borders at that date was perfectly solvent and being individually liable for said certificate, it was perfectly good. That by false representations said William R. induced complainant to believe he was in danger of losing his money, and by false tokens and representations said Borders and Crozier induced complainant to believe said land was worth the amount of the mortgage and he fully believed it was good security when he accepted it. It is decreed the contract between complainant and William R. Borders, whereby the certificate was surrendered and said note and mortgage taken therefor, be rescinded, as having been obtained from complainant by collusion and fraud between said Borders and Crozier; that complainant have a decree personal against said Borders for $2,482.97, the amount due on said certificate, and for execution; that complainant have judgment for costs against said Borders and Crozier, and surrender said note and mortgage and agreement of February 7, 1885, to the clerk, the same to remain on the files of the court, until the amount decreed complainant be paid. From this decree William R. Borders appealed.

Messrs. KOERNER & HORNER, for appellant.

Mr. H. CLAY HORNER, for appellee.

GREEN, J. We have complied with the request of counsel

for appellant, and have carefully examined all the evidence, including the letter of William R. Borders of January 31, 1885, in reply to a letter from appellee of the day before. Borders testified he met appellee on a train going to St. Louis in the early part of January, 1885, and both agree this was the first interview in which the trade was mentioned, and agree also that they met by appointment the same day in St. Louis and talked over the matter. Appellee does not fix the date except that it was January or February, and testified the Crozier note and mortgage were those mentioned by Borders and offered in exchange for the certificate. Borders denies this, and says he did not then have that note and mortgage, which were executed January 20, 1885, but spoke only of a Davidson mortgage securing $2,800, and also testified he did not see appellee from the date of his sale to Crozier, January 20th, up to January 31st. But appellee's letter of January 30th mentions the receipt by him of a favorable account of the land from *Crozier*, and appoints an interview with Borders at Sparta; and in the letter from Borders, in reply, dated the next day, he writes of the "*levy upon our property*" to satisfy judgment; that "*no leniency will be shown us*, and our valuable property is to be *sacrificed;*" that he has offered appellee the best terms in his power; that ': we are settling very fast with our depositors in this way; delay is dangerous.' " I could have used the note I offered you, and can do so yet, if you want it on the terms offered, to wit, trade my note for you to give me an order on *Crozier* for difference, which order, if not paid, shall not bind you, and you to become owner of full face of note and interest. If terms are satisfactory put your name on ctf. without recourse and send same to me, and I will send you note and mortgage indorsed in such way; mortgage is duly recorded, and *I made Crozier warranty deed*. Answer by return mail." " I will take pleasure in showing you the land at any convenient time; I am too busy now; besides, the ground is covered with snow, and you could not judge of quality of soil. I can not put this matter off. If you do not want the note, say so, and I will place it elsewhere; time is very precious with me now." This letter,

in addition to other inferences to be drawn therefrom, contradicts appellant's version of the time and subject-matter of the interviews with appellee on the train and at St. Louis, and shows they took place after January 20th, and when appellant owned the Crozier note and mortgage; because if, at the date of letters, the parties had not seen each other except on the train and at St. Louis, and this note and mortgage were not the ones talked of, but the Davidson mortgage only, appellee would not have written about the Crozier land as he did, nor would a reply have been sent in which the Crozier note, mortgage and the certificate of deposit were mentioned as matters understood by both parties.

We have also examined the uncontradicted testimony of the witness Stout, that William R. Borders told him he was about to sell this land to a man named Kattleman, and if he cornered witness and asked anything about the land, to put the price up; that after Borders had sold the land to appellee, and witness asked Borders how he came to sell the land for the price he did, the latter replied he got hold of a man that had more money than brains, and also said in reply to the remark of witness that Crozier would never pay, "Of course; that is *the calculation.*" Taking all the evidence together, it satisfactorily appears that William R. Borders and appellee were not strangers, but acquaintances for several years, and at the times when the false representations were made to him by Borders and Crozier, as found by the decree, appellee had no reason to suspect either of them of unfair dealing, or of a design to deceive or defraud him. He did not, therefore, entertain such suspicion, but relying upon the false and fraudulent representations of the pretended friend and his confederate, and upon the evidence he *believed* was furnished by the deed, note and mortgage, that the land had been sold to Crozier for $2,800, and was worth that sum, he accepted Borders' proposition, and Borders, in conducting the transaction which resulted in his procuring appellee's certificate, worth over $2,000, in exchange for the note of an insolvent maker, assigned without recourse and secured by a mortgage upon land not exceeding $600 in value, did not merely remain passive and silent and permit appellee to act upon his own

judgment uninfluenced by false and fraudulent representations, but pretending to be his friend, knowingly and purposely deceived him concerning the financial condition of those liable for the payment of the certificate, excited his fear, and caused him to believe the land mortgaged was worth the pretended price, that the Crozier note and mortgage were good, and the sum secured thereby would be paid when due; hence this case, upon the facts, is not within the operation of the rule announced in any one of the twenty-one propositions set out in the printed argument on behalf of appellant, but on the contrary, wilful misrepresentation of material facts by Borders, with a design to fraudulently deceive appellee and induce him to enter into and consummate a trade he would not otherwise have made, gross inadequacy of consideration, the false tokens of a colorable sale, a note and mortgage representing a value they did not possess, held out to appellee to further fraudulently influence his judgment and persuade him to part with his property, all these and other badges of fraud on the part of Borders, appearing by the evidence, characterize the transaction and sustain the findings and decree. Allen et al. v. Hart, 72 Ill. 104; Witherwax v. Riddle, 121 Ill. 145.

We are satisfied appellee was entitled, under the proof, to the relief decreed, and affirm the decree of the Circuit Court.

*Judgment affirmed.*