# Crooker *et al. v.* White *et al.*

*Bill to Rescind Contract and Cancel Note and Mortgages.*

(Decided May 20, 1909.   Rehearing denied June 30, 1909.
50  South.  227.)

1. *Contract; Validity; Fraudulent Misrepresentation.*—To amount to fraud, authorizing equity to rescind a contract the misrepresentation must relate to a fact material to the interest of the other party and must be such a representation concerning the subject-matter as if taken as true would add substantially to its value or promise.

2. *Same; Evidence.*—In order to justify the cancellation of a contract for fraudulent representation such representation must be established by clear and convincing proof, and that they were falsely .and fraudulently made must be so established.

3. *Same; Equitable Relief.*—Where the parties rely on their own judgment or are not unduly imposed on by others. equity will leave them where they placed themselves, although equity will not permit fraud and undue misrepresentation.

[Crooker, et al. v. White, et al.]

4. *Sales; Validity; Fraudulent Representation; Materiality.*—A representation made by the seller of an agency right to sell the family right to use a clothes washer and wringing machine as to the number of family rights others have sold and the profits made thereon, if made to induce the buyer to purchase, are material representations, and if false, constitute fraud sufficient to justify a rescission of the contract.

5. *Same.*—In order for representation to authorize the rescission of a contract, the representation must be shown to be untrue, the party making them must have known or have had good reason to believe that they were untrue, and the buyer must have relied on it; the presumption that one intends the natural consequences of his voluntary act in cases of misrepresentation amounting to fraud authorizing equity to rescind a contract arises only after proof of the other essential elements of fraudulent misrepresentation.

6. *Same; Evidence.*—The evidence in this case stated and examined and held not to show that such fraud was practiced on the buyer as to give the right to rescind.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Bryant L. White and another against E. R. Crooker and another, to rescind a contract for fraud, and to cancel certain notes and mortgages given therefor. Decree for complainants and respondents appeal. Reversed and decree rendered dismissing the bill.

HAMILTON & CRUMPTON, for appellant. The bill cannot be maintained for the reason that it attempted to remove a cloud upon title, and the complainants are not in possession of the land.—*Creighton v. Johnson,* 27 Ala. 303; *Tyson v. Brown,* 64 Ala. 244; *Bonner v. Bonner,* 64 Ala. 375; *Curry v. Peoples,* 83, Ala. 225; *Ashurst v. McKenzie,* 92 Ala. 484; *Brown v. Hunter,* 121 Ala. 210. Where representations are immaterial equity will not interfere.— *Crown v. Carrier,* 66 Ala. 590. Even if the representation is material, if the purchaser could ascertain the truthfulness of such representation by ordinary diligence, then the contract will not be avoided.— *Taber v. Peters,* 74 Ala. 90; *Coleman v. Banks,* 115 Ala. 307. In order to rescind there must be an offer to ten-

[Crooker, et al. v. White, et al.]

der the thing received at the earliest practical moment, and the disaffirmance must be prompt and unreserved. —*Stevenson v. Ellison*, 123 Ala. 439; *Algood v. Banks*, 115 Ala. 425; *Lockwood v. Fitts*, 90 Ala. 153. False representations as to immaterial facts or matters are not actionable.—*Greil Bros. v. Lomax*, 89 Ala. 420; *Jordan v. Pickett*, 78 Ala. 331.

JOHN E. MITCHELL, for appellee.—Council discuss the rulings on pleadings and cite authorities to support his contention. He insists that it is not necessary to aver or prove possession of complainant.—*Brown v. Hunter*, 121 Ala. 210; *Beeler's Sons v. Dreher*, 129 Ala. 386. The amendment sufficiently .alleged an offered to do equity by surrendering the things received.—24 A. & E. Ency. of Law, 621; *Martin v. Martin*, 35 Ala. 566; *Perry v. Boyd*, 126 Ala. 169. The complainants acted within a reasonable time after the discovery of the fraud.—*Kilpatrick v. Hinson*, 81 Ala. 468; *Young v. Arntz*, 86 Ala. 121; *Algood v. Bank of Piedmont*, 115 Ala. 424. The fact that complainants did not inform themselves was no defense.—*Hooper v. Whittaker*, 130 Ala. 324; *Woodbury v. The State*, 69 Ala. 245; *Brown v. Freeman*, 79 Ala. 410; *Burrows v. Pacific G. Co.*, 81 Ala. 258; *Henry v. Allen*, 93 Ala. 200; *Baker v. Maxwell*, 99 Ala. 564. Ward's misrepresentations were material, and will avoid the contract if they were relied on. 138 Ala. 214; 112 Ala. 578; 90 Ala. 428; 56 Ala. 377.

SAYRE, J.—The bill in this cause in its aspect of primary importance sought a decree for the rescission of a contract of sale by the appellants to the appellees of an agency right to vend the family right to use the "Mystic clothes washer," and the cancellation of notes and a mortgage given to secure the purchase price. The

[Crooker, et al. v. White, et al.]

gravamen of the bill is to be found in its fifth paragraph as amended, which is as follows: "Orators further aver that the said I. I. Ward represented to them that the said Mystic clothes washer and wringer were articles easy to sell and admirably adapted for the purpose for which they were made; that one Joe Page, who was alleged by said I. I. Ward to be an agent to sell family rights, had told him, the said Ward, that he, the said Page, had sold about 50 family rights of the said Mystic clothes washer, and would clear about ($300) from said sales; that the said I. I. Ward also stated to orators that his brother, George Ward, had on one day, in about two hours and a half, sold six family rights. Orators aver that the statements made by said I. I. Ward in reference to the sales of family rights by Joe Page and George Ward were false, and that, in fact, the said Page had not sold more than half a dozen family rights, and the said George Ward had not sold any family rights, and the said Page had not told said Ward that he had sold about 50 family rights. Orators further aver that the representations of said I. I. Ward in reference to the sales of the said Joe Page and George Ward were calculated to deceive orators as to the value of the agency rights of the said Mystic clothes washer and wringer, and did deceive orators, and that the said representations were one of the inducements which led orators to sign said notes and mortgage, and that orators would not have signed said notes and mortgage had they known at that time that said representations of I. I. Ward were untrue. Orators further aver that they did not learn of the falsity of such statements until a short while prior to filing the bill of complaint in this cause." Passing over the allegation that the clothes washer was represented to be an article easy to sell and admirably adapted for the purpose for which it was made as being

mere words of praise and commendation, ordinarily permissible to honest men in their dealings with one another, and deemed insufficient in law to impose liability (*Tabor v. Peters*, 74 Ala. 90, 49 Am. Rep. 804), and as so treated by the complainants, it is to be observed that the representations complained of consisted in the statement by the defendant Ward that Page had told him that he, Page, had sold about 50 family rights of the clothes washer, and would clear about $300 from the sales, and that his brother George had on one day, in about two hours and a half, sold six family rights. The allegation further is that these statements were false, and resulted in complainants' deception.

Misrepresentation constituting fraud which will authorize the rescission in equity of a contract must relate to a fact material to the interests of the other party (*Juzan v. Toulmin*, 9 Ala. 662, 44 Am. Dec. 448), that is to say, it must be a misrepresentation concerning the subject-matter, "which, taken as true, would add substantially to the value or promise" of that subject-matter.—*Jennings v. Broughton*, 5 De Gex. M. & G. 130. In the application of this definition of materiality to concrete cases everything depends upon the nature of the fact represented and its capacity to affect human conduct as determined by ordinary human experience. Important in this case was the value of the market purchased by the appellees. That depended upon the urgency of the need or desire the article was designed to meet, and the appeal it would likely make to the judgment or fancy of prospective purchasers. Probably the value of an agency to sell a new article or an old article with new shapes or adaptations, the manufacture of which is protected by patent and the sale of which is restricted by contract, can be shown in no more satisfactory way than by reference to the experience of others vending

it.  In *Allen v. Hart*, 72 Ill. 104, the vendors of a patent right territory represented that other persons had made purchases, and all had done well, realizing large profits.  It was held that the vendees had a right to rely upon the representation as materially affecting the value of the thing sold.  So in this case the nature of the subject-matter considered, we hold that the representations as to the statements made by Page and the sales by Ward were material to the contract.

The parties have made no contention in respect to the absence from the amended bill of an averment touching the good faith of the appellants in making the representations charged to have been false.  There is no allegation that they were fraudulently false.  It is a necessary rule of law, as it is of all human conduct, that men are presumed to intend the natural and inevitable consequences of their voluntary acts.  This presumption, however, as to purpose or design, in its application to a case of this character, must arise after proof of other essential elements of fraudulent misrepresentation which are capable of proof, and must be proven.  The representation must be shown to be untrue.  The vendors must have known, or had good reason to believe, it was untrue; and the vendees must have relied upon it.—*Hooper v. Whitaker*, 130 Ala. 324, 30 South. 355; Pom. Eq. Jur. § 876.  The misrepresentations complained of are charged to have been made by the defendant Ward to the complainants, and to have induced them to enter into the contract and to execute the mortgage and notes.  The natural meaning of this charge is that both representations were addressed to and acted upon by both complainants, and the rule that chancery gives relief secundum allegata et probata would require complainants to prove the facts as alleged.  But, without insisting upon this infirmity in complainants' case,

we will examine the evidence. The complainant White, testifying as a witness in his own behalf, denied that Ward had. told him or Bankester in his presence at any time before the mortgage was signed how many family rights Page had said he had sold, but he testified that Ward had told him that his brother had sold six. He would not say that Ward had made any statement as to the amount Page had cleared on his sales. The other complainant, Bankester, testified that the defendant Ward had told him the evening before the mortgage and notes were executed that Page had made a statement substantially as alleged. He further testified "to the best of his knowledge" that the defendant Ward had made to him the statement charged in respect to his sale of six family rights substantially as alleged. Page testifying denied having made the statement attributed to him, but said that one Sanders had made it, and the form of. the question here put to the witness justifies the inference that he intended to convey the idea that Sanders made the statement in his presence. The defendant Ward testified without qualification that Page had made the statement to him in reference to the sale of 50 rights, and to his best recollection that he had repeated the statement to complainants after the mortgage and notes had been signed. Complainants testified that subsequent to the transaction they "found out" that Page had not sold 50 rights and George Ward had not sold 6. George Ward, a witness for complainants, stated that he had bargained to sell some rights and had gone to see several parties who said they would take them later, and as soon as they could raise the money. It was also shown that both complainants had been thinking about the washing machine business, and had broached the subject to Ward. This is a close reproduction of the entire evidence on the point at issue. With-

out relieving complainants of their proper burden of proof, we are unable to say that fraud was practiced upon complainants. On the contrary, the reasonable net tendencies of the evidence are consistent with good faith on the part of the defendants. In *Howle v. North Birmingham Land Co.,* 95 Ala. 389, 11 South. 15, it was said: "The right to the rescission or cancellation of a contract because of fraudulent misrepresentations must be established by clear and convincing proof. A court of equity cannot grant such relief upon a probability, nor even upon a mere preponderance of the evidence. The representations themselves, and that they were falsely and fraudulently made, must be clearly established." The complainants may have made a bad bargain; but "it is not the province of a court of equity to even up the consideration of contracts, and see that equality is meeted out in the various transactions of life, or to supply judgment and skill where it is wanting. It will not permit fraud and undue misrepresentation, but where parties rely upon their own judgment, or are not unduly imposed upon by others, it will leave them where they place themselves."—*Johnson v. Rogers,* 112 Ala. 581, 20 South. 929, 931.

The bill contains allegations touching the execution of the mortgage which indicate that the pleader had in mind an alternative and secondary aspect in which the relief of the cancellation of the mortgage was sought on the ground that some at least of the parties were induced to sign it by fraudulent representations that it would not affect their homestead rights in the land conveyed. This part of the bill is not stated as in the way of an alternative claim to relief, but rather as a reinforcement of the aspect of the bill first considered. But the facts alleged have no relation to the execution of the contract of sale of the agency right, and constitute in

effect an alternative reason, if anything, why the complainants should have the relief of a cancellation of the mortgage, though the contract of sale of the agency be left unimpaired. The bill having been found on consideration of the pleading and proof to be devoid of equity in its primary aspect, this last-named aspect must stand upon its own merits. So considered, it is a bill to remove cloud upon title and it was necessary to allege and prove—passing over the objection that the bill shows that one only of the complainants could in any event have relief on this ground—that complainants were not in possession at the commencement of the suit.—4 Mayf. p. 197, § 418. There was no independent equity to obviate this necessity. However, this part of the bill was eliminated on the appellant's demurrer, nor was there an amendment restating the issue, so that it need not be further considered. We have referred to it for the reason that evidence was taken as to it, and counsel have argued it.

The decree will be reversed and a decree here rendered dismissing the bill.

Reversed and rendered.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., concur.

